1  MICHAEL ZWEIBACK (SBN 143549)
   **ZWEIBACK, FISET & COLEMAN LLP**
2  523 W. 6th Street, Suite 450
   Los Angeles, CA 90014
3  Telephone: (213) 266-5170
   Facsimile: (213) 289-4025
4  Email: Michael.Zweiback@zfclaw.com

5  PATRICIA M. HAMILL (PA 69912, CA Pro Hac Vice *Pending*)
   ANDREW S. GALLINARO (PA 201326, CA Pro Hac Vice *Pending*)
6  **CONRAD O'BRIEN PC**
   1500 Market Street, Centre Sq. West, Ste. 3900
7  Philadelphia, Pennsylvania 19102
   Telephone: (215) 864-9600
8  Facsimile: (215) 864-9620
   E-Mail: phamill@conradobrien.com

9  *Attorneys for Defendant/Counterclaimant/Cross-Claimant JOHN DOE*

10        **UNITED STATES DISTRICT COURT FOR THE**
11           **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 12  JANE DOE, an individual, | Case No. 2:19-cv-1005-AB-KS |
|          Plaintiff, | |
| 13 | |
|          v. | **JOHN DOE'S RESPONSE IN** |
| 14 | **OPPOSITION TO CALIFORNIA** |
| 15  CALIFORNIA INSTITUTE OF | **INSTITUTE OF TECHNOLOGY'S** |
|    TECHNOLOGY, a California Corporation; | **MOTION TO DISMISS CROSS-CLAIMS** |
| 16  JOHN DOE, an individual; KEVIN | |
|    GILMARTIN, an individual; and DOES 1 | |
| 17  through 100, inclusive, | |
|          Defendants. | |
| 18 | |
| 19  JOHN DOE, an individual, | |
|          Counterclaimant, | |
| 20 | |
| 21          v. | |
| 22  JANE DOE, an individual, | |
|          Counter Defendant. | |
| 23 | |
| 24  JOHN DOE, an individual, | |
|          Cross-Claimant, | |
| 25 | |
|          v. | |
| 26 | |
| 27  CALIFORNIA INSTITUTE OF | |
|    TECHNOLOGY, a California Corporation, | |
| 28          Cross-Defendant. | |

# TABLE OF CONTENTS

I.      STATEMENT OF FACTS ............................................................1

II.     ARGUMENT.............................................................................7

     A.     JOHN WAS NOT REQUIRED TO EXHAUST ADMINISTRATIVE
           REMEDIES ..........................................................7

     B.     JOHN HAS ADEQUATELY PLED A TITLE IX CLAIM ...............11

          1.     JOHN HAS PLED GENDER BIAS ........................................12

          2.     JOHN'S CROSS-CLAIM SUPPORTS AN ERRONEOUS
              OUTCOME CLAIM ................................................16

          3.     JOHN'S CROSS-CLAIM SUPPORTS A SELECTIVE
              ENFORCEMENT CLAIM ..........................................17

     C.     John Adequately Pleads Breach of Contract....................................19

     D.     John Adequately Pleads IIED & Negligence ...................................24

III.    CONCLUSION.........................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*300 DeHaro St. Inv'rs v. Dep't of Hous. & Cmty. Dev.*,
   161 Cal. App. 4th 1240 (2008) .......................................................................9, 10

*Doe v. Amherst Coll.*,
   238 F. Supp. 3d 195 (D. Mass. 2017)..............................................................22

*Doe v. Brown Univ.*,
   166 F. Supp. 3d 177 (D.R.I. 2016) ..................................................................22

*Doe v. Case Western Reserve Univ.*,
   2017 WL 3840418 (N.D. Ohio Sept. 1, 2017) .................................................21

*Doe v. Lynn Univ., Inc.*,
   235 F. Supp. 3d 1336 (S.D. Fla. 2017)........................................................13, 14

*Doe v. Marymount Univ.*,
   2018 WL 1352158 (E.D. Va. Mar. 14, 2018)..................................................15

*Doe v. Miami Univ.*,
   882 F.3d 579 (6th Cir. 2018) .......................................................................14, 15

*Doe v. Regents of the UC*,
   2016 WL 11504216 (C.D. Cal. Dec. 1, 2016) (*rev'd on other
   grounds*) .........................................................................................................11

*Doe v. Regents of UC*,
   891 F.3d 1147 (9th Cir. 2018) ...........................................................................8

*Doe v. Rider Univ.*,
   2018 WL 466225 (D.N.J. Jan. 17, 2018).........................................................21

*Doe v. Trustees of the Univ. of Pennsylvania*,
   270 F. Supp. 3d 799 (E.D. Pa. 2017)..........................................................16, 21

*Doe v. Univ. of Notre Dame*,
   2017 WL 1836939 (N.D. Ind. May 8, 2017), *vacated pursuant to
   settlement* ........................................................................................................22

*Doe v. University of Oregon*,
  2018 WL 1474531 (D. Or. Mar. 26, 2018)......................................................19

*Doe v. Washington & Lee Univ.*,
  No. 6:14-cv-00052, 2015 WL 4647996 (W.D. Va. Aug. 5, 2015)....................16

*Ersa Grae Corp. v. Fluor Corp.*,
  1 Cal. App. 4th 613, 2 Cal. Rptr. 2d 288 (1991) ...............................................21

*Gupta v. Stanford Univ.*,
  124 Cal. App. 4th 407 (2004) .......................................................................8, 10

*Hughes v. Pair*,
  46 Cal. 4th 1035 (2009) ....................................................................................25

*Indian Model Schools v. Oakland Unified School Dist.*,
  227 Cal. App. 4th 258 (2014) ...........................................................................10

*Jolley v. Chase Home Fin., LLC*,
  213 Cal. App. 4th 872 .......................................................................................24

*Karimi v. Golden Gate Sch. of Law*,
  2019 WL 587545 (N.D. Cal. Feb. 13, 2019) .................................................8, 20

*King v. DePauw Univ.*,
  2014 WL 4197507 (S.D. Ind. Aug. 22, 2014) ...................................................22

*McGill v. Regents of University of California*
  44 Cal.App.4th 1776, 52 Cal.Rptr.2d 466 (1996) ........................................9, 10

*Montague v. Yale Univ.*,
  No. 16-00885 (D. Conn. Mar. 29, 2019), ECF No. 177 ....................................21

*Pomona College v. Superior Court*,
  45 Cal. App. 4th 1716 (1996) ..............................................................................9

*Ritter v. Okla.*,
  2016 WL 2659620 (W.D. Okla. May 6, 2016)...................................................22

*Ritter v. Okla. City*,
  2016 WL 3982554 (W.D. Okla. July 22, 2016) .................................................18

JOHN DOE'S RESPONSE IN OPPOSITION
TO CALIFORNIA INSTITUTE OF TECHNOLOGY'S MOTION TO DISMISS

*Rolph v. Hobart and William Smith Colleges*,
    271 F. Supp. 3d 386 (W.D.N.Y. 2017)............................................................16

*Sateriale v. R.J. Reynolds Tobacco Co.*,
    697 F.3d 777 (9th Cir. 2012) ...........................................................20, 21, 23

*Sutcliffe v. Wells Fargo Bank, N.A.*,
    283 F.R.D. 533 (N.D. Cal. 2012)....................................................................20

*Tafuto v. N.J. Inst. of Technology*,
    2011 WL 3163240 (D.N.J. July 25, 2011) ......................................................18

*Yusuf v. Vassar College*,
    35 F.3d 709 (2d Cir. 1994) ................................................................11, 12, 17

*Zumbrun v. Univ. of S. Cal.*,
    25 Cal. App. 3d 1 (Ct. App. 1972)...................................................................20

**Statutes**

Cal. Civ. Code § 1714.........................................................................................25

California Code of Civil Procdure 1094.5 ....................................................*passim*

# I.      STATEMENT OF FACTS

An alleged sexual encounter between John and Jane occurred on August 16, 2017 during a gathering of friends at a Caltech dormitory. *See* Dkt. 29, Cross-Claims ("CC" ¶¶ 19-30). Jane knew at the time of the incident that John was in a long-term relationship with one of Jane's friends. *Id.* ¶¶ 16-18. The encounter occurred when John was incapacitated from alcohol – as confirmed by video, multiple witness statements, and Jane's text message to a friend stating that John "was probably blacked out" when they had sex. *Id.* ¶¶ 20-22. In contrast, there was substantial evidence that Jane was, at most, mildly intoxicated during the alleged sexual encounter. *Id.* 23, 31-33.

Jane was upset over a recent breakup and claimed that John asked her for sex in exchange for information about her ex-boyfriend cheating on her. *Id.* ¶¶ 25-30. Jane admitted that she agreed to John's alleged sexual advances but terminated the sexual encounter once she learned all John knew about her ex-boyfriend. *Id.* The next day, Jane apologized to John's girlfriend for hooking up with John and texted another friend that she "banged" John. *Id.* ¶¶ 21, 34. But when Jane's ex-boyfriend denied cheating, Jane feared that he might be upset because their relationship was "complicated" and possibly not fully over. *Id.* ¶ 36. As a result, Jane fabricated a rape allegation to excuse her behavior and filed a claim of sexual assault with Caltech's Title IX office. *Id.* ¶¶ 36-37.

When John first met with Caltech's Title IX coordinator, Felicia Hunt, to discuss Jane's complaint, John asked about asserting a counter-claim. *Id.* ¶ 51-52. But Ms. Hunt discouraged John from doing so by explaining (incorrectly) that his

claim had no merit and threatening potential consequences for a false claim. *Id.* Ms. Hunt also advised that John should not hire an attorney and lied to John that she would be required to inform Jane if he did, which (according to Ms. Hunt) would only cause Jane to get an attorney as well – but Ms. Hunt did not advise John when Jane retained an attorney during the ensuing investigation. *Id.* ¶¶ 61-62.

A month after meeting with Ms. Hunt, John filed a claim of sexual assault against Jane for having sex with John while he was incapacitated – Caltech waited a month before agreeing to investigate John's claim. *Id.* ¶ 62, 66. While Caltech imposed interim sanctions against John immediately after receiving Jane's complaint, which severely limited John's campus access and forced him to resign from his work-study job, Caltech imposed no interim sanctions against Jane in response to John's complaint. *Id* ¶¶ 55-58, 64-65.

Caltech's investigation and adjudication of sexual misconduct claims is governed by its Sexual Misconduct Policy ("the Policy"). *Id.* ¶ 38. The Policy does not afford accused students the right to a hearing or an opportunity to question witnesses or the accuser. *Id.* ¶¶ 46-48, 177-178. Rather, investigators independently interview witnesses, collect evidence, and make a recommended finding to the Dean of Students, who based exclusively on the investigators' report makes a final responsibility finding and sanctions determination. *Id.* ¶¶ 46-47.

After concluding their investigation, the investigators found that John was not responsible for any sexual misconduct. *Id.* ¶ 75. Moreover, the investigators largely vindicated John by finding Jane responsible for sexual misconduct for having sex

with John while he was incapacitated. *Id.* However, the investigators also recommended that John be found responsible for an Honor Code violation for lying to Jane that her ex-boyfriend had cheated on her. *Id.* ¶ 76. John never received notice that he was under investigation for an Honor Code violation and therefore had no opportunity to defend that allegation. *Id.*

After learning of the recommended ruling, Caltech pressured its investigators to reverse their initial findings and to hold John responsible for Sexual Misconduct; the investigators complied and surreptitiously issued a "revised" report without notice and without explanation for the reversal. *Id.* ¶¶ 75, 78. Caltech directed the investigators to do this in response to threats from Jane's counsel and to avoid public criticism of its process when its treatment of women in Title IX investigations was already under attack by students and in the press. *Id.* ¶¶ 9, 82, 166-170. The revised report found John responsible for sexual misconduct for a non-consensual kiss, but maintained the finding that Jane consented to all the subsequent sexual activity while John did not. *Id.* ¶¶ 85-87.

The investigators' final report relied on overt gender stereotypes to conclude that Jane's behavior in having non-consensual sex with John was largely excusable. *Id.* ¶ 100-102. Despite maintaining their determination that Jane knew or should have known that John was incapacitated when she chose to have sex with him, the investigators reasoned that it was John (while incapacitated) who took advantage of Jane because she was "in a vulnerable state." *Id.* The investigators reasoned that because of her vulnerability she only "technically violated" the policy for having sex

with an incapacitated male student, and explicitly found John partially responsible for his own sexual assault. *Id.*

While Caltech succeeded in forcing their investigators to "split the baby" and find both students responsible for sexual misconduct, Dean Gilmartin tried to turn the result entirely against John by forcing John to leave the University and thereby avoid having to finalize a finding against Jane. *Id.* ¶¶ 112-122. Specifically, before finalizing the disciplinary decision, Dean Gilmartin met with John and threatened to suspend John if he did not agree to voluntarily withdraw from the University – falsely claiming that John needed time away from school for alcohol treatment. *Id.* ¶¶ 113-114, 118. John had an emotional breakdown upon hearing the dean's threats and had to terminate the meeting. *Id* ¶ 114. In a subsequent meeting with John and his family, Dean Gilmartin continued to insist that John withdraw to avoid suspension, even against the medical advice of a counselor John retained to counter Dean Gilmartin's pretextual justification for removing John from campus. *Id.* ¶ 118. Dean Gilmartin only relented when John hired an attorney to challenge the dean's actions. *Id.* The threat that John could avoid suspension by withdrawing was false – John was not suspended when the dean finalized the decision and sanctions. *Id.* Rather, Dean Gilmartin's deceitful conduct was an attempt to avoid making a final decision against Jane that Dean Gilmartin knew would be controversial in the current social climate. *Id.*

Dean Gilmartin's final decision was consistent with the investigators' altered report finding John responsible for a non-consensual kiss and an Honor Code

violation, and Jane responsible for non-consensual sexual intercourse. *Id.* ¶¶ 126-131. The sanctions Dean Gilmartin imposed were substantially more severe against John than against Jane. *Id.* John submitted an appeal, but Caltech is withholding its final decision based on this litigation, initiated by Jane. *Id.* ¶¶ 150-152.

**John's Specific Allegations of Gender Bias**

John's cross-claims include averments demonstrating that Caltech's mishandling of his case was motivated by the desire to avoid criticism for sanctioning a female student who claimed to be a sexual assault survivor – even though the female's claims were disproven, and Caltech's investigators determined that she violated university standards that are regularly and strictly enforced against male students. John's cross-claim includes the following allegations from which this Court could infer Caltech's actions were motivated by gender-bias:

- Caltech's Title IX Coordinator actively discouraged John from filing a claim against Jane, demonstrating general hostility to male students involved in the disciplinary process. CC ¶¶ 51-52.

- Caltech investigators have never found that a male student accused of having sex with an incapacitated female "only technically" violated the Policy and have never excused the male's behavior because the female victim propositioned the male student for sex. *Id.* ¶¶ 103, 107-108.

- No female victim of sexual assault has ever been simultaneously found responsible for an Honor Code violation, as John was, for taking advantage of an emotionally vulnerable male student. *Id.* ¶ 109.

- Caltech has never proposed a Remedy-Based Resolution that involved separation from school for alcohol treatment for any female student who was found to be the victim of non-consensual sexual intercourse when incapacitated from alcohol. *Id.* ¶ 120.

- Caltech has never imposed alcohol-related sanctions against a female student who Caltech determined was sexually assaulted while incapacitated from alcohol. *Id.* ¶ 130.

- John was strong-armed by Caltech when it negotiated a Remedy-Based Resolution, at the same time it bent over backwards to accommodate Jane's demands – even though Jane was found responsible for the most serious offense between the two students. *Id.* ¶¶ 121-122.

- John received a harsher sanction for a non-consensual kiss than Jane received for non-consensual intercourse. *Id.* ¶¶ CC 132.[1]

- Male students found responsible for having sex with incapacitated female students have uniformly received sanctions of temporary or permanent separation from the University. *Id.* ¶ 139. In contrast, Jane was only required to take a class on consent. *Id.* ¶ 131.

- Caltech has never considered it relevant whether a female student sexually propositioned a male, if the male student knew or should have known that the female was incapacitated and incapable of consent at the time of the sexual activity. In contrast, Dean Gilmartin explicitly reasoned in his decision letter that John shared in the blame for his assault because of his conduct in propositioning Jane for sex. *Id.* ¶¶ 140-145.

---

[1] Caltech's explanation that it was simply adopting the recommendation of John's alcohol counselor is specious. First, John submitted an alcohol treatment plan in response to Dean Gilmartin's pretextual claim that John's alcoholism was so severe that he should leave school. In fact, John's counselor concluded that John had a "mild to moderate substance use disorder" and that John did not have an alcohol dependence issue. (*See* Dkt. 36, Kaba Decl. Ex. A at 2). Second, John submitted the treatment plan to show that he was already addressing his alcohol issues. But Dean Gilmartin insisted on making John's treatment recommendation part of John's sanction and therefore made a permanent part of his student conduct file (that may be disclosed to future graduate programs or employers). The notion that Caltech was behaving out of concern for John's wellbeing is not a reasonable inference to be drawn from John's Cross-claims. But even if the Court disregards the alcohol-related sanctions, then John still received the same sanction as Jane (i.e., a class on consent) for a far lesser offense (nonconsensual kiss vs. nonconsensual sex). The problem with that result is self-evident.

- Caltech has never found a female responsible for an Honor Code violation for propositioning a male student to have sex with her while the male was in a "vulnerable state." *Id.* ¶146.

- Caltech was under general pressure from the government to strengthen its enforcement of Title IX, to clamp down on campus sexual assaults and to protect women. *Id.* ¶¶ 154-165.

- Caltech was under specific pressure to treat female accusers more seriously based on criticism it received in response to its handling of claims of sexual harassment brought be female students against a male professor. The incident was covered in newspaper articles and caused student protests during the same time frame Caltech adjudicated John's case. *Id.* ¶ 166-167.

- Caltech was similarly criticized in its student newspaper by a female undergraduate student who described Caltech's Title IX process as unfair. *Id.* ¶ 168-169.

- "[T]he negative publicity Caltech received in connection with these instances and in the current social climate had a significant impact on Caltech's treatment of John and its desire to avoid adjudicating and punishing a female student for sexual assault." *Id.* ¶ 170.

Finally, and in addition to the above allegations, John's complaint asserts that Caltech maintains exclusive possession of facts concerning how it has dealt with other sexual misconduct cases because student records are confidential, and that discovery will bear out his claim of disparate treatment based on gender. *Id.* ¶¶ 106, 180.

## II.   ARGUMENT

### A.   John Was Not Required To Exhaust Administrative Remedies

Caltech's Argument that John was first required to file a Petition for Administrative Mandate pursuant to Section 1094.5 of the state Civil Code of Procedure (CCP) is wrong because Caltech's disciplinary process does not include

a hearing. Section 1094.5 provides that the writ procedure applies only to a "**proceeding in which by law a hearing is required to be given,** evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal…"  CCP § 1094.5.

All the cases Caltech relies on in asserting that the exhaustion doctrine "applies to university students challenging the outcome of a disciplinary proceeding" (Caltech Mem. at 4) involve schools with disciplinary procedures that include hearings. *See Gupta v. Stanford Univ.,* 124 Cal. App. 4th 407, 410-411 (2004) (holding that "the remedy of administrative mandamus … applies to private organizations **that provide for a formal evidentiary hearing**" and noting that Stanford "required an evidentiary hearing before a judicial panel … [a]s such, mandamus is the appropriate remedy under section 1094.5."); *Doe v. Regents of UC*, 891 F.3d 1147, 1150 (9th Cir. 2018) (requiring exhaustion pursuant to CCP § 1094.5 in case where student challenged the result of a hearing finding him responsible for sexual assault); *Karimi v. Golden Gate Sch. of Law*, 2019 WL 587545, at *12 (N.D. Cal. Feb. 13, 2019) (requiring exhaustion in case where "Golden Gate's handbook provided for a formal hearing on disciplinary charges").  Based on the plain language of Section 1094.5, John is not required to seek a writ of administrative mandate to challenge the outcome of Caltech's investigation, which did not include even the semblance of a hearing. The adjudicator in John's case, Dean Gilmartin, did not interview a single witness or even the parties to the case. Rather, he relied entirely on the written report of investigators who separately and individually interviewed

students without any opportunity for the parties to ask questions or challenge the evidence against them in a live setting. This does not satisfy the hearing requirement of Section 1094.5. *300 DeHaro St. Inv'rs v. Dep't of Hous. & Cmty. Dev.*, 161 Cal. App. 4th 1240, 1251–52 (2008) (Section 1094.5 "contemplates an adversarial hearing grounded in due process").

A comparison of *Pomona College v. Superior Court*, 45 Cal. App. 4th 1716, 1729 (1996) and *McGill v. Regents of University of California* 44 Cal. App. 4th 1776 (1996) is instructive. Both cases involve professors challenging university processes that led to tenure denial. In *Pomona*, the court dismissed the professor's claims holding that he was required to first exhaust his administrative remedies under Section 1094.5 because "Pomona's Handbook requires both a hearing and the taking of evidence in reaching its initial tenure decision, and provides for a 'formal hearing' upon the filing of a grievance complaint by a dissatisfied faculty member." *Pomona*, 45 Cal. App. 4th at 1729.

In contrast, the appellate court in *McGill* reversed a trial court's decision to dismiss a professor's claims based on exhaustion because "there was no legal requirement that the tenure decision result from an evidentiary hearing." *McGill*, 44 Cal. App. 4th at 1785; *see also 300 DeHaro St. Inv'rs.,* 161 Cal. App. 4th at 1251– 52 (rejecting exhaustion argument brought by agency challenging landlord's breach of contract action arising out of regulatory agreement to control rent increases, holding that "no administrative hearing was required by law, and therefore section 1094.5 does not apply to this case"). In *300 Deharo*, the court rejected the

government's argument that "purely documentary proceedings can satisfy the hearing requirement of . . . section 1094.5, so long as the agency is required by law to accept and consider evidence from interested parties before making its decision." *Id.* at 1250-51. This Court should similarly reject any argument from Caltech that something less than the "formal evidentiary hearing" described by *Gupta* (on which Caltech principally relies) is sufficient to invoke Section 1094.5.[2]

Finally, this Court should take note of two facts that make Caltech's exhaustion argument particularly impractical and unfair to John. First, Caltech has not argued failure to exhaust in response to Jane's Title IX claim, even though Jane's Complaint openly challenges the result of Caltech's disciplinary decision against her, just as John does.[3] Second, Caltech has purposefully withheld its final decision on John's administrative appeal, which John submitted roughly five months ago, and will continue to do so pending the outcome of this litigation. This means that if John

---

[2] Caltech may rely on *Indian Model Schools v. Oakland Unified School Dist.*, 227 Cal. App. 4th 258, 295 (2014) which noted that "1094.5 does not require a 'formal evidentiary hearing'" in the context of a writ proceeding challenging a charter school's charter revocation pursuant to an administrative procedure that required a public hearing. The court simply noted that a public hearing that included notice, taking of evidence, and written findings of fact satisfied the hearing requirement of 1094.5. But there was nothing remotely approximating a hearing in John's case. Accordingly, the *McGill* and *300 DeHaro St.* decisions cited above are apposite and controlling.

[3] *See* Dkt. 28, Jane Doe Sec. Amended Compl. at ¶¶11, 26, 28 alleging that Caltech conducted a "botched Title IX purported investigation"; "not only did Caltech wholly fail to comply with Title IX at every juncture as it related to their purported investigation, they failed to comply with their own policies and procedures"; "[Caltech's investigation] was anything but a search for truth and everything about protecting itself…"; "Caltech used two clearly untrained and ill equipped [investigators]."

were required to pursue a writ of administrative mandamus, he could not do so until Caltech decided his appeal. *See* CCP § 1094.5 (limiting writ procedure to "the purpose of inquiring into the validity of any *final* administrative order or decision"). Accordingly, Caltech is preventing John from pursuing the very relief it claims he failed to seek.

Moreover, if this Court determined that both John and Jane have stated otherwise valid Title IX claims but that only John's claims should be dismissed for failure to exhaust, this case may have potential collateral estoppel consequences for John in a subsequent state proceeding because John will remain a party in this case as a defendant to Jane's claims. In short, Caltech's disparate treatment of John even in this litigation is designed to create maximum disadvantage for John.

## B.    John Has Adequately Pled A Title IX Claim

The Ninth Circuit has not articulated a standard for challenging university disciplinary actions under Title IX. But there is substantial guidance from other circuits that recognize several theories. *See Doe v. Regents of the UC*, 2016 WL 11504216, at *4 (C.D. Cal. Dec. 1, 2016) (explicitly adopting Second Circuit test articulated by *Doe v. Columbia*, 831 F.3d 46 (2d Cir. 2016)) (*rev'd on other grounds*). Courts have recognized that students subject to disciplinary proceedings can state Title IX claims under multiple theories including: "erroneous outcome" and "selective enforcement." *See, e.g.*, *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994). A plaintiff may plead different theories, and the Court should not dismiss a Title IX complaint if the factual allegations make a claim plausible under any theory. *Id.* at 715. Here, John pleads both erroneous outcome and selective

enforcement. Both theories require allegations from which the Court can plausibly infer that the University's conduct was motivated by gender.

### 1.     John Has Pled Gender Bias

As noted by the Second Circuit in *Doe v. Columbia*, courts are obligated "to draw reasonable inferences *in favor of* the sufficiency of the complaint" and "*Iqbal* does not require that the inference of discriminatory intent supported by the pleaded facts be *the most plausible* explanation of the defendant's conduct. It is sufficient if the inference of discriminatory intent is plausible." *Columbia*, 831 F.3d at 57 (emphasis in original).

John summarized above the facts that support an inference of gender bias. In short, John pled numerous examples of faulty reasoning and dubious conclusions applied by Caltech, which John asserts Caltech has never applied to any similarly situated female in John's position – an adjudicated victim of sexual assault due to incapacitation from alcohol. John pleads that female students who Caltech determined drank too much and were taken advantage of sexually by male students: have never been punished; have never been blamed for initiating the sexual encounter even though drunk; have never received an honor code violation for drunken behavior; and have never received sanctions requiring alcohol treatment. Similarly, John pleads that male students in Jane's position – adjudicated responsible for knowingly having sex with an incapacitated person – have never received sanctions as lenient as Jane. Instead, similarly situated men have been uniformly suspended or expelled, while Jane was required only to take a class.

John couples those allegations with specific examples of pressure Caltech faced to take sexual assault against women more seriously – both general pressure from the government's stepped-up efforts to combat campus sexual assault, and specific pressure from within the Caltech community based on criticism for the way Caltech handled previous cases of sexual assault and harassment against women.[4] John's complaint amply explains how Caltech, cognizant of the influence of the "Me Too" movement, was desperate to avoid deciding a case against a female who claimed to be the survivor of a sexual assault, and even more unwilling to punish her for committing assault. Courts in many other cases have held that the combination of such facts are enough to infer gender bias.

For example, Caltech cites the 2016 opinion of *Doe v. Lynn Univ.*, which held that a student failed to plead gender bias in a complaint challenging a university's sexual misconduct determination. But Caltech failed to reference the same court's 2017 decision finding the student's amended complaint cured this deficiency, based on virtually identical facts that John alleges against Caltech. *Doe v. Lynn Univ., Inc.*, 235 F. Supp. 3d 1336 (S.D. Fla. 2017). The Court pointed specifically to allegations that "Defendant was criticized during the period preceding Plaintiff's disciplinary proceeding for failing to take seriously complaints by female students . . . [citing to]

---

[4] While not pled in the Complaint, John has since discovered additional pressure facing Caltech – a change.org petition criticizing Caltech's Title IX procedures for failing to protect survivors of sexual assault (which began as a response to the May 21, 2018 student newspaper article that John did plead at ¶ 168) has garnered more than 560 signatures. (available at https://www.change.org/p/california-institute-of-technology-protect-survivors-of-sexual-assault-at-caltech )

JOHN DOE'S RESPONSE IN OPPOSITION
TO CALIFORNIA INSTITUTE OF TECHNOLOGY'S MOTION TO DISMISS

a news media report that school security chose not to press charges against a young male perpetrator accused of having sexually harassed four female students." *Id.* The court went on to note that these allegations coupled with additional assertions about nationwide pressures facing universities, were sufficient to overcome a motion to dismiss. *Id.* at 1342. The Court reasoned that "Plaintiff, having alleged that Defendant's representatives were cognizant of criticism levied at Defendant's handling of sexual assault complaints by female students against males and having coupled those allegations with (albeit more general) assertions about similar nationwide pressure, has done enough." *Id.* The court found that such allegations are "sufficient to nudge Plaintiff's claims across the line from conceivable to plausible, which is all the law requires." *Id.* at 1340.

The Sixth Circuit reached a similar conclusion in a lawsuit also challenging a university's sexual misconduct decision, again emphasizing that a complaint "need only create the plausible inference of intentional gender discrimination; although alternative non-discriminatory explanations for the defendants' behavior may exist." *Doe v. Miami Univ.*, 882 F.3d 579, 594 (6th Cir. 2018). The Court held that the complaint plausibly alleged a causal link between the flawed outcome and gender bias by describing a potential pattern of gender-based decision making together with allegations that the University was under pressure from the federal government and from students to combat sexual assault on campus. *Id.* The Court held that these allegations, together with the fact that further relevant evidence was necessarily in the University's control, were "sufficient specific facts to support a reasonable

inference of gender discrimination" and that plaintiff was entitled to discovery to prove his claims. Here, John alleges that Caltech has adjudicated similar cases where the genders of the parties were reversed (i.e., males accused of assault by incapacitated female) and that Caltech has never reached the decision it did in this case. Just as in *Doe v. Miami*, that pattern of decision making combined with the specific public pressure described above, is sufficient to establish gender bias.

Numerous other cases throughout the country have concluded that allegations comparable to John's are sufficient to plead gender bias, particularly where – as here – the evidence necessary to develop such facts is within the defendant's exclusive possession. The following are representative cases in which courts have denied university motions to dismiss based on similar facts:

- *Doe v. Marymount Univ.*, 2018 WL 1352158, *6-10 (E.D. Va. Mar. 14, 2018): The Court ruled that plaintiff's allegations of gender bias, when read as a whole, were sufficient to "nudge[] his Title IX claim over the Rule 12(b)(6) bar." The Court reached this conclusion after reviewing a constellation of allegations regarding skewed disciplinary procedures, procedural errors in the investigation, failure to obtain or consider exculpatory evidence, crediting female student's purportedly implausible allegations, bias of investigators and decisionmakers, allegations concerning the impact of the "Dear Colleague" letter and other political forces, and the fact that respondents are almost invariably male.

- *Rolph v. Hobart and William Smith Colleges*, 271 F. Supp. 3d 386, 401-402 (W.D.N.Y. 2017): The Court denied a motion to dismiss student's Title IX claim and found complaint pled gender bias by alleging "that, before his

disciplinary hearing, [the college] was criticized in the media for failing to take seriously female students' complaints of sexual assault by male students" and that the college "faced pressure from the federal government to take a hard stance on sexual assault" in the form of "OCR's 'Dear Colleague Letter' from April 2011."

- *Doe v. Washington & Lee Univ.*, No. 6:14-cv-00052, 2015 WL 4647996, *9-10 (W.D. Va. Aug. 5, 2015): The Court denied a motion to dismiss Title IX claims filed by a male student challenging university sexual misconduct decision; plaintiff sufficiently alleged a "causal link between his expulsion and gender bias" based on biased statements by university official as well as allegations that the university "was under pressure from the government to convict male students of sexual assault."

- *Doe v. Trustees of the Univ. of Pennsylvania*, 270 F. Supp. 3d 799, 823-824 (E.D. Pa. 2017): The Court denied a motion to dismiss a Title IX erroneous outcome claim where plaintiff alleged *inter alia* "that Defendant's implementation of discipline for sexual assault has been influenced by criticism it has received in the past for not taking the complaints of female students sufficiently seriously." The Court also held that plaintiff could conduct discovery "to ascertain whether, in fact, there are facts to support his allegations" regarding a pattern of gender-based discrimination.

### 2.    John's Cross-Claim Supports an Erroneous Outcome Claim

Caltech acknowledges that the elements of an erroneous outcome claim are: (1) facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding; and (2) causal connection between the flawed outcome and gender bias. (Caltech Mem. at 6.) John addresses the gender bias element of this

JOHN DOE'S RESPONSE IN OPPOSITION
TO CALIFORNIA INSTITUTE OF TECHNOLOGY'S MOTION TO DISMISS

claim at length above. Caltech does not attempt to argue that John's complaint fails to satisfy the first element, other than stating in a footnote that it "disputes that John has alleged facts sufficient to cast articulable doubt on the outcome of the proceeding." (*Id.* at 7, FN 2.) But it is beyond dispute that John has alleged facts calling into doubt the outcome of his disciplinary proceedings. Among many other defects, John alleges that Caltech's investigators originally decided this case in his favor, but were forced by Caltech to change their determination to find John responsible for sexual misconduct due to threats from Jane and the desire to avoid public criticism. CC ¶¶ 9, 75, 78, 82, 166-170. Because John has alleged that the outcome of his disciplinary matter was not based on the facts, but on the University's desire to avoid negative publicity, he has satisfied this element.

### 3.    John's Cross-Claim Supports a Selective Enforcement Claim

A selective enforcement claim may be premised on allegations that, "regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." *Yusuf*, 35 F.3d at 715. Federal courts have held that a male plaintiff can state a "selective enforcement" claim by alleging that "the [educational institution's] actions against [the male plaintiff] were motivated by his gender and that a similarly situated woman would not have been subjected to the same disciplinary proceedings." *Tafuto v. N.J. Inst. of Technology*, 2011 WL 3163240, at *2 (D.N.J. July 25, 2011); *see also Ritter v. Okla. City,* 2016 WL 3982554, at *2-3 (W.D. Okla. July 22, 2016) (allowing selective enforcement claim to proceed based on allegations comparable to John's).

Again, John addressed above why this Court may infer that Caltech's actions in this case were motivated by gender. And John specifically alleges that men at Caltech have been accused of and found responsible for the exact offense Jane was here – having sex with a student who was incapacitated from alcohol. John has further alleged that in all those cases, the men found responsible "uniformly received sanctions including temporary or permanent separation from the University." CC ¶ 139. In contrast, Jane was required to take a class. *Id.* ¶ 131. John also included numerous allegations that women in John's position (found to be the victim of non-consensual sex by reason of incapacitation from alcohol) have never been punished for their alcohol consumption, nor have they been blamed or told that they "share responsibility" for their assault, as John was, based on a finding that the women initiated the sexual contact while incapacitated. *Id* ¶¶ 109, 120, 130, 140-145. In fact, John claims that Caltech's Title IX staff are trained that there is nothing an incapacitated student could say or do to justify another student having sex with them. *Id.* ¶¶ 52-53. Finally, John points to the inequity in the sanctions issued to both John and Jane in the same case despite Jane being found responsible for a drastically more severe offense than John (nonconsensual sex vs. nonconsensual kiss). *Id.* ¶¶ 126-131. These allegations are sufficient to establish that a similarly situated woman would not have been subject to the same treatment and that Caltech's actions were motivated by gender.

Finally, Caltech cannot fault John for making many of his allegations "on information and belief" or defeat his claims with an argument that there are

18

"alternative explanations" for Caltech's disparate treatment of John and Jane in this case. (Caltech Mem. at 16.) Caltech erroneously argues that if it can articulate an alternate justification for its actions that are not based on gender, this Court can ignore John's claims to the contrary. But that is not the law. A federal court in Oregon recently reaffirmed this point in a similar Title IX case. Quoting *Doe v. Columbia,* the Oregon court noted that the plausibility pleading standard "'does not require that the inference of discriminatory intent supported by the pleaded facts be the most plausible explanation of the defendant's conduct. It is sufficient if the inference of discriminatory intent is plausible.'" *Doe v. University of Oregon*, 2018 WL 1474531, at \*15 (D. Or. Mar. 26, 2018). The court found it "significant that, given the University's legitimate interest in maintaining the confidentiality of sexual misconduct investigations, the evidence that could show which (if either) inference is correct is for all practical purposes unavailable to plaintiff without the tools of discovery." *Id.* Applying these principles, the Court denied the University's motion to dismiss. This Court should do the same.

## C.      John Adequately Pleads Breach of Contract[5]

In California, the plaintiff in a breach-of-contract action must plead: (1) the existence of the contract; (2) performance by the plaintiff or excuse for nonperformance; (3) breach by the defendant; and (4) damages. *See Sutcliffe v. Wells Fargo Bank, N.A.*, 283 F.R.D. 533, 549 (N.D. Cal. 2012). As Caltech acknowledges,

---

[5] Though John separately pleads Declaratory Judgment as Count VI of his Cross-Claims, this claim seeks a specific remedy for and is derivative of John's Breach of Contract claim.  Accordingly, John will not separately address Count VI in this brief.

California courts have stated that the relationship between students and universities, including the terms of that relationship listed in student handbooks, are contractual in nature. *Karimi*, 2019 WL 687545 at *11; *Zumbrun v. Univ. of S. Cal.*, 25 Cal. App. 3d 1, 10 (Ct. App. 1972).

In general, a contract must be sufficiently definite "for the court to ascertain the parties' obligations and to determine whether those obligations have been performed or breached." *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 789 (9th Cir. 2012) (quoting *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 209 (2006)). However, the law "does not favor, but leans against, the destruction of contracts because of uncertainty." *Sateriale*, 697 F.3d at 790 (quoting *Cal. Lettuce Growers v. Union Sugar Co.*, 45 Cal. 2d 474, 481 (1955)). The "degree of certainty required may be affected by the dispute which arises and by the remedy sought." *Sateriale*, 697 F.3d at 789 (quoting Restatement (Second) of Contracts § 33 cmt. b (1981)). "Courts decide the disputes before them, not other hypothetical disputes which might have arisen." *Id.* Further, that an alleged contract affords a party some discretion in performance does not mean that the alleged contract is unenforceable. *Id.* (citing Restatement (Second) of Contracts § 34 cmt. a (1981)). A contract will be enforced if it is possible to reach a fair and just result "even if, in the process, the court is required to fill in some gaps." *Ersa Grae Corp. v. Fluor Corp.*, 1 Cal. App. 4th 613, 623 (1991).

Caltech's motion essentially dismisses all of John's allegations of breach on the basis that he has not identified "specific" promises that the school failed to keep.

Caltech cites out-of-state case law for the proposition that promises to be "fair and impartial" and to treat parties "consistently" are too general to amount to contractual obligations. However, Caltech fails to acknowledge that there are many out-of-state cases to the contrary. *See Montague v. Yale Univ.*, No. 16-00885 (D. Conn. Mar. 29, 2019), ECF No. 177 at 48-49 (denying summary judgment on claim for breached promise of "fairness" based on similar allegations that Yale manipulated process against male accused)[6]; *Doe v. Rider Univ.*, 2018 WL 466225, at *13 (D.N.J. Jan. 17, 2018) (denying motion to dismiss breach-of-contract claim that university failed to use "a trained investigator or investigators to promptly, fairly and impartially investigate the complaint"); *Doe v. Trs. of the Univ. of Pa.*, 270 F. Supp. 3d 799, 818 (E.D. Pa. 2017) (refusing to dismiss breach-of-contract claim that university's investigation was not "thorough"); *Doe v. Case Western Reserve Univ.*, 2017 WL 3840418, at *13 (N.D. Ohio Sept. 1, 2017) (denying motion for summary judgment on breach-of-contract claim that university "would ensure the rights of the complainant and the respondent are maintained by supporting a fair process"); *Doe v. Univ. of Notre Dame*, 2017 WL 1836939, at *9-11 (N.D. Ind. May 8, 2017) (granting injunctive relief on contract claim in part because university failed to honor policy's requirement for "prompt, fair and impartial investigation and resolution"), *vacated pursuant to settlement*; *Doe v. Amherst Coll.*, 238 F. Supp. 3d 195, 216-17 (D. Mass. 2017) (rejecting motion to dismiss breach-of-contract claim that college failed to conduct thorough, impartial, and fair investigation and fact-finding

---

[6] This decision is so recent that it does not appear on Westlaw. A copy of the court's decision is attached hereto as Appendix A.

JOHN DOE'S RESPONSE IN OPPOSITION
TO CALIFORNIA INSTITUTE OF TECHNOLOGY'S MOTION TO DISMISS

process); *Ritter v. Okla.*, 2016 WL 2659620, at *3 (W.D. Okla. May 6, 2016) (granting injunctive relief in part based on alleged contractual breach of policy requiring an "equitable resolution" in proceedings involving sexual misconduct); *Doe v. Brown Univ.*, 166 F. Supp. 3d 177, 195 (D.R.I. 2016) (permitting breach-of-contract claim to proceed that alleged violation of policy permitting respondent to offer "relevant" evidence in sexual misconduct proceeding even though that term is "vague and undefined"); *King v. DePauw Univ.*, 2014 WL 4197507, at *13 (S.D. Ind. Aug. 22, 2014) (granting injunction after finding plaintiff could prevail on breach-of-contract claim that university failed to respond to complaint "properly and sensitively," and failed to investigate "appropriately" and "competently").

More importantly, in analyzing John's breach-of-contract claims, Caltech does not apply the language of its policies to the facts that John alleges. Rather, Caltech analyzes its Policy terms in an abstract, hypothetical manner. As noted above, this approach is discouraged by the Ninth Circuit's interpretation of California contract law. *See Sateriale*, 697 F.3d at 789 ("degree of certainty required may be affected by the dispute which arises. . . . Courts decide the disputes before them, not other hypothetical disputes which might have arisen."). A few examples of the promises Caltech breached in this case illustrate that contractual certainty in this instance is not a problem:[7]

---

[7] All of the specific promises contained in Caltech's Sexual Misconduct Policy that John alleges were breached are set forth in Paragraph No. 204 of John's cross-claim, which are incorporated herein by reference and will not be repeated here.

- John alleges Caltech breached the Policy's promise to conduct the disciplinary proceeding in a "fair and impartial" manner. CC ¶ 204. Even if in the abstract it might be difficult to precisely define the contours of fairness, there can be no dispute that "fairness" cannot include Caltech's intentional manipulation of the investigators' findings to dictate a result Caltech believed would be more politically correct even if inconsistent with the facts.

- John alleges Caltech breached the Policy's promise to provide "consistent treatment of the parties." *Id*. John pleads numerous instances of indisputably inconsistent treatment he received during the process. For example, John alleged that Caltech imposed campus restrictions on John that substantially limited his access to campus facilities in response to Jane's complaint, and that Caltech did not place similar restrictions on Jane in response to John's complaint. *Id*. ¶¶ 55-58, 64-65. Similarly, John alleged that he received a sanction requiring alcohol treatment and that Jane did not, even though both claimed to be intoxicated during the incident. In addition, the complaint describes Ms. Hunt's warning to John that he should not retain counsel to assist in the investigation and that she would be forced to advise Jane if he did, and her subsequent failure to inform John that Jane retained counsel during the investigation. *Id*. ¶¶ 61-62.

- John alleges that Caltech breached the Policy's promise that investigators will be trained "regularly in issues related to sexual misconduct and how to conduct an investigation process that …promotes accountability." *Id.* ¶ 204. Even if this promise does not fully define the training investigators will receive, Caltech cannot

dispute that training must minimally include Caltech's policy on consent. John pleads that Caltech follows a zero-tolerance policy if students engage in sex with an incapacitated party, but that Caltech's investigators failed to apply that policy to John's case because of inadequate training. *Id.* ¶¶ 42, 52, 53, 100, 204.

As set forth above, there is little ambiguity that John alleges a course of conduct by Caltech that fails to live up to any possible interpretation of its obligations under the Policy. As a result, Caltech's position that the Policy lacks sufficient definiteness to be enforced lacks merit and should be rejected.[8]

### D.   John Adequately Pleads IIED & Negligence

The elements of intentional infliction of emotional distress are "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009). Similarly, a general claim for negligence is grounded in the principle that "[e]veryone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want

---

[8] In the alternative, to the extent the Court disagrees that the Policy is an enforceable contract, John has adequately pled Promissory Estoppel by alleging John's decision to matriculate to Caltech was in reliance on the disciplinary procedures and protections promised by Caltech in the Policy. *See* CC ¶¶ 208-214; *Jolley v. Chase Home Fin., LLC*, 213 Cal. App. 4th 872, 897 (2013) (elements of promissory estoppel are "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by the party's reliance.").

of ordinary care or skill in the management of his or her property or person." Cal. Civ. Code § 1714

John meets that standard here by alleging the following conduct by Caltech: (1) Caltech, fearing criticism, directed its investigators to reverse their decision that John was not responsible for sexual misconduct; (2) Dean Gilmartin threatened John with suspension to attempt to force John to leave Caltech for reasons having nothing to do with the facts of the case and everything to do with avoiding a politically unacceptable result; and (3) John suffered an emotional breakdown upon being told he would be suspended for an offense Caltech knew he didn't commit. This conduct was intentional (and at least negligent), obviously likely to harm the average reasonable person, and did harm John.

## III.   CONCLUSION

For all the foregoing reasons, John respectfully requests that this Court deny Caltech's Motion to Dismiss his Cross-claims in its entirety.

*[Signatures on following page]*

JOHN DOE'S RESPONSE IN OPPOSITION
TO CALIFORNIA INSTITUTE OF TECHNOLOGY'S MOTION TO DISMISS

1    DATED: April 12, 2019          **ZWEIBACK, FISET & COLEMAN**

2                                   **LLP**

3                                   /s/ Michael Zweiback
                                    Michael Zweiback
4                                   Attorneys for Defendant/Cross-
                                    Claimant/Counter-Claimant
5                                   **JOHN DOE**

6

7    DATED: April 12, 2019          **CONRAD O'BRIEN PC**

8                                   /s/ Patricia M. Hill
                                    Patricia M. Hamill
9                                   Andrew S. Gallinaro
                                    Attorneys for Defendant/Cross-
10                                  Claimant/Counter-Claimant
11                                  **JOHN DOE**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PROOF OF SERVICE**

I, Erin Coleman, declare:

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is ZWEIBACK, FISET & COLEMAN LLP, 523 W. 6th Street, Suite 450, Los Angeles, CA 90014.

On April 12, 2019, I served the document(s) described as **JOHN DOE'S RESPONSE IN OPPOSITION TO CALIFORNIA INSTITUTE OF TECHNOLOGY'S MOTION TO DISMISS** on the interested parties via the Court's CM/ECF:

| | |
|---|---|
| Anahita Sedaghatfar<br>THE COCHRAN FIRM-CALIFORNIA<br>4929 Wilshire Boulevard, Suite 1010<br>Los Angeles, California 90010<br>Telephone:  (323) 435-8205<br>Facsimile:   (323) 282-8280<br>Email: asedaghatfar@cochranfirm.com | Attorneys for Plaintiff<br>JANE DOE |
| Moez M. Kaba<br>HUESTON HENNIGAN LLP<br>523 West 6th Street, Suite 400<br>Los Angeles, California 90014<br>Telephone: (213) 788-4543<br>Email: mkaba@hueston.com | Attorneys for Defendant<br>CALIFORNIA INSTITUTE OF<br>TECHNOLOGY, KEVIN<br>GILMARTIN |

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed on the 12th day of April 2019, at Los Angeles, California.

/s/ Erin Coleman
Erin Coleman

1