UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>CALIFORNIA INSTITUTE OF TECHNOLOGY, et al.,<br><br>　　　　　Defendants. | Case No. 2:19-cv-01005-AB (KSx)<br><br>**ORDER (1) GRANTING DEFENDANTS CALIFORNIA INSTITUTE OF TECHNOLOGY AND KEVIN GILMARTIN'S MOTION TO DISMISS SECOND AMENDED COMPLAINT [41]; AND (2) GRANTING CALIFORNIA INSTITUTE OF TECHNOLOGY'S MOTION TO DISMISS JOHN DOE'S CROSS CLAIMS [34]** |

**I.　INTRODUCTION**

Two motions are before the Court: (1) Defendants California Institute of Technology ("Caltech") and Kevin Gilmartin's Motion to Dismiss Plaintiff Jane Doe's Second Amended Complaint (Dkt. No. 41) and (2) Defendant Caltech's Motion to Dismiss John Doe's Cross Claims (Dkt. No. 34). Both motions are opposed. (Dkt. Nos. 49, 50.) Having considered the parties' submissions, the relevant law, and the record in this case, as well as the arguments of counsel at oral argument, the Court **GRANTS** both motions.

**II.　BACKGROUND**

Jane Doe ("Jane") and John Doe ("John") are students at Caltech, a federally

1.

funded educational institution located in Pasadena, California with approximately 1,000 students. (Dkt. No. 28, Second Am. Compl. ("SAC") ¶¶ 1-3, 8-9, 13.) Kevin Gilmartin is the Dean of Undergraduate Students at Caltech and oversees Caltech's Title IX investigations. (SAC ¶¶ 4, 10.)

Jane and John filed complaints against one another for alleged sexual misconduct that occurred at a social gathering just before the 2017-2018 school year. (SAC ¶ 15.) Jane alleges that John "g[o]t her drunk to the point of blacking out," "blocked the door" of a dormitory at Caltech "with his body" to prevent her from leaving (SAC ¶¶ 15, 18), and raped her (SAC ¶¶ 11, 20). The next day, Jane went to Caltech's counseling center and reported the rape. (SAC ¶ 23.) Caltech appointed two faculty investigators, who conducted an investigation into Jane's complaint. (SAC ¶¶ 25, 28.) Two months later, John filed a complaint against Jane for engaging in nonconsensual sexual activity with him. (SAC ¶ 25.) John claimed that he was incapacitated on the night of the alleged rape and could not consent. (*Id.*)

After conducting an investigation, Caltech concluded that both students violated Caltech's Policy. (SAC ¶ 34.) Caltech's investigators found that John kissed Jane without her consent and that Jane violated Caltech Policy by having sexual intercourse with John while he was "incapacitated" and could not consent. (SAC ¶ 32.) On or about June 26, 2018, Gilmartin issued a final decision accepting the investigators' findings and conclusions. (SAC ¶ 34.)

Jane sued Caltech in this Court, alleging the following thirteen causes of action: (1) violation of 20 U.S.C. § 1681 ("Title IX"); (2) assault; (3) battery; (4) sexual battery; (5) negligence; (6) violation of Civil Code section 52.4; (7) violation of Civil Code section 52.1; (8) violation of Civil Code section 51.7; (9) false imprisonment; (10) intentional infliction of emotional distress ("IIED"); (11) negligent infliction of emotional distress ("NIED"); (12) violation of Business and Professions Code section 17200; and (13) breach of contract. (*See generally* SAC.) Jane also sued Gilmartin for claims one through twelve and John for claims two through twelve.

John has asserted counterclaims against Jane, and cross claims against Caltech for (1) violation of Title IX; (2) breach of contract; (3) promissory estoppel; (4) NIED; (5) IIED; and (6) declaratory judgment and injunctive relief.  (Dkt. No. 34.)  Caltech now moves to dismiss Jane's claims and John's cross claims against Caltech.

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2)[1] requires a plaintiff to present a "short and plain statement of the claim showing that the pleader is entitled to relief."  Under Rule 12(b)(6), a defendant may move to dismiss a pleading for "failure to state a claim upon which relief can be granted."

To defeat a Rule 12(b)(6) motion to dismiss, the complaint must provide enough factual detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must also be "plausible on its face," that is, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Labels, conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

A court may dismiss a complaint under Rule 12(b)(6) based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). When ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual

---

[1] All further references are to the Federal Rules of Civil Procedure, unless otherwise indicated.

3.

1 allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

A district court should provide leave to amend upon granting a motion to dismiss unless it is clear that the complaint could not be saved by amendment. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend, however, "is properly denied . . . if amendment would be futile." *Carrico v. City & Cty. of S.F.*, 656 F.3d 1002, 1008 (9th Cir. 2011).

## IV. DISCUSSION

### A. Motion to Dismiss Jane Doe's Second Amended Complaint

Caltech and Gilmartin seek to dismiss all of Jane's claims against them. The Court will evaluate each claim in turn.

#### 1. Jane Fails to Plead a Title IX Claim (First Cause of Action).

Jane asserts a Title IX claim against Caltech and Gilmartin. Jane alleges that she was subjected to sexual harassment by John and that school officials failed to take proper remedial action after she reported John's conduct. Title IX states that "[n]o person shall, on the basis of sex, be excluded from participating in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance." 20 U.S.C. § 1681(a). To state a claim for student-to-student harassment under Title IX, a plaintiff must show (1) the school "exercised substantial control over both the harasser and the context" in which the harassment occurs; (2) the plaintiff suffered "sexual harassment that is so severe, pervasive, and objectively offensive that it can be said to deprive the victim[ ] of access to the educational opportunities or benefits provided by the school"; (3) the school had "actual knowledge" of the harassment; and (4) the school's response amounts to deliberate indifference that either "causes students to undergo harassment" or makes students "vulnerable" to harassment. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 739 (9th Cir. 2000) (citation omitted).

Defendants move to dismiss Jane's Title IX claim against Caltech on the basis that Jane cannot plausibly allege (1) Caltech acted with deliberate indifference to Jane's report or that (2) Caltech's failure to respond made her vulnerable to any further harassment. (Mot. at 7.) Defendants also move to dismiss Jane's Title IX claim against Defendant Gilmartin on the ground that individuals are not liable under Title IX. (Mot. at 15-16.)

### a.   Jane Fails to Plausibly Allege that Caltech Acted with Deliberate Indifference.

Title IX deliberate indifference requires more than mere negligence. *See Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 642 (1999). A university is deliberately indifferent "only where [its] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Id.* at 648. "Under this standard, if an institution takes timely and reasonable measures to end the harassment, it is not liable under Title IX for prior harassment." *Takla v. Regents of the Univ. of Cal.*, No. 2:15-CV-04418-CAS (SHx), 2015 WL 6755190, at *5 (C.D. Cal. Nov. 2, 2015) (citation omitted). "If, on the other hand, an institution either fails to act, or acts in a way which could not have reasonably been expected to remedy the violation, then the institution is liable for what amounts to an official decision not to end discrimination." *Id.* ("The administrative enforcement scheme presupposes that an official who is advised of a Title IX violation refuses to take action to bring the recipient into compliance. The premise, in other words, is an official decision by the recipient not to remedy the violation." (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998))).

A plaintiff "must plead facts that support a plausible inference that the school made what amounts to 'an official decision . . . not to remedy' the discrimination." *Karasek v. Regents of the Univ. of Cal.*, No. 15-CV-03717-WHO, 2015 WL 8527338, at *8 (N.D. Cal. Dec. 11, 2015) (quoting *Oden v. N. Marianas Coll.*, 440 F.3d 1085, 1089 (9th Cir. 2006)). Universities are not required to "purg[e] their schools of

actionable peer harassment," and victims of peer harassment do not have a Title IX right "to make particular remedial demands." *Davis*, 526 U.S. at 648. Deliberate indifference is generally "a fact-intensive inquiry" that must be resolved by the trier of fact. *Lilah R. ex rel. Elena A. v. Smith*, No. 11-cv-01860-MEJ, 2011 WL 2976805, at *5 (N.D. Cal. July 22, 2011). Nevertheless, "[i]n an appropriate case, there is no reason why courts, on a motion to dismiss, for summary judgment, or for a directed verdict, [can]not identify a response as not 'clearly unreasonable' as a matter of law." *Davis*, 526 U.S. at 649.

Here, Jane alleges that she filed a report the day after John raped her and told Caltech that "she felt scared and unsafe having to be and live on campus with John Doe there." (SAC ¶ 23.)  Jane further alleges that after Jane reported the alleged rape, Caltech allowed John to remain on campus and "did not take any steps to have [him] removed, even for a short period of time[,] pending a preliminary investigation into [Jane]'s allegations." (*Id.*) Since then, Jane has allegedly encountered John on campus "on several occasions." (SAC ¶ 24.) During these encounters, John allegedly "glared" at her, causing her to feel "scared and intimidated." (*Id.*) Jane alleges that she "was forced to quit the tennis team" because Caltech's tennis court is adjacent to the baseball field, making it "impossible" to avoid seeing John if she remained on the team. (*Id.*)

Accepting Plaintiff's factual allegations as true, the Court finds Jane has not plausibly alleged that Caltech acted with deliberate indifference. While Jane alleges that "Caltech issued an order stating that Plaintiff is not permitted to go to the Fleming dorm any longer because this is where John Doe lives" (*id.*), Plaintiff fails to allege when Caltech issued the order and whether Caltech implemented or failed to implement other measures during the investigation in an effort to separate John from Jane. Absent specific factual allegations indicating whether, when, and to what extent Caltech implemented measures to separate Jane and John between the time that she

6.

reported the alleged assault to Caltech and the time that Caltech issued its final decision, it is impossible to determine whether Caltech's interim measures were "clearly unreasonable" in light of the known circumstances.

To the extent that Jane's Title IX claim is based on the theory that Caltech was deliberately indifferent to the "institutional problem of sexual violence" on campus prior to the assault (SAC ¶ 12), Jane fails to plead sufficient facts to support this theory. As Caltech pointed out in its motion and at oral argument (Dkt. No. 41 at 7 n.4; Dkt. No. 53 at 5-6), a university typically is not liable for purported deliberate indifference to a general problem of sexual violence absent knowledge of a specific threat. *See Moore v. Regents of the Univ. of Cal.*, No. 15-CV-05779-RS, 2016 WL 2961984, at *9 (N.D. Cal. May 23, 2016) (granting motion to dismiss Title IX claim that was based on university's pre-assault conduct because plaintiff failed to allege "the university had an specific knowledge of a heightened risk of sexual assault either by John Doe or in the particular context in which the assault occurred"); *Karasek*, 2015 WL 8527338 at *9. Because Jane has not alleged facts demonstrating a known risk of sexual assault either by John, *see Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1296 (11th Cir. 2007), or the particular context in which the assault occurred, *see Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170 (10th Cir. 2007), the allegations in the complaint do not support a finding of deliberate indifference to known harassment.

Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss and **DISMISSES** Jane's Title IX claim against Caltech with leave to amend.[2]

### b. Jane's Title IX Claim Against Gilmartin Fails as a Matter of Law.

Jane makes no effort to defend her Title IX claim against Gilmartin, and the

---

[2] The Court does not address whether Caltech's deliberate indifference caused Jane to suffer further harassment or made her vulnerable to it because Jane has not plausibly alleged that Caltech acted with deliberate indifference.

7.

Court finds that amendment would be futile. *See Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 247 (2009) ("Title IX . . . [does] not authoriz[e] suit against school officials, teachers, and other individuals."). The Court therefore **DISMISSES** Jane's Title IX claim against Gilmartin with prejudice.

### 2.  The Court Grants Caltech's Motion to Dismiss Causes of Action Two Through Twelve.

Caltech moves to dismiss Jane's assault, battery, sexual battery, negligence, false imprisonment, and Civil Code sections 51.7, 52.1, and 52.4 claims against Caltech and Gilmartin on two grounds.[3] First, Caltech argues the Second Amended Complaint is an impermissible "form of shotgun and group pleading" because it groups all Defendants together without identifying what each Defendant did wrong. (Dkt. No. 41 at 3.)  Second, Caltech argues Jane cannot plausibly plead that Caltech or Gilmartin engaged in the sort of conduct necessary to maintain these claims. The Court agrees.

As noted by Caltech, for each cause of action, "Jane incorporates each antecedent allegation by reference with no indication of which facts specifically pertain to the claim." (*Id.* at 16.) Jane's intentional tort claims are against "all Defendants with no indication of what conduct serves as the basis for each claim." (*Id.* at 3; *see* SAC ¶¶ 51-76, 103-109.) Moreover, Jane's intentional tort and statutory claims contain no specific allegations against Caltech or Gilmartin. (*Id.*)  Instead, the allegations that support these causes of action concern only *John*'s conduct. In sum, it is unclear what facts form the basis of Jane's intentional tort and statutory claims. Neither Caltech nor the Court should have to guess.

Accordingly, the Court **DISMISSES** causes of action two through twelve

---

[3] Jane Doe notes, in her opposition, that she "agrees to dismiss" causes of action two through four and six through nine against Defendant Gilmartin. (Dkt. No. 50 at 16-17 n.2-3.) The Court therefore **DISMISSES** Jane's second, third, fourth, sixth, seventh, eighth, and ninth causes of action against Gilmartin with prejudice.

against Caltech with leave to amend. The Court also **DISMISSES** causes of action five and ten through twelve against Gilmartin with leave to amend.

### 3. Jane's Breach of Contract Claim Fails (Thirteenth Cause of Action).

Caltech moves to dismiss Jane's breach of contract claim against Caltech because Jane failed to exhaust administrative remedies. (Dkt. No. 41 at 22-23.) The Court concludes that Jane failed to exhaust judicial remedies for the reasons set forth in Section IV.B.

Caltech also moves to dismiss Jane's breach of contract claim on the ground that Jane fails to identify any specific promise that Caltech breached. (Dkt. No. 41 at 23-25.) To prevail on a breach of contract claim, a plaintiff must allege (1) the existence of a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; (4) and damages. *Karimi v. Golden Gate Sch. of Law*, 361 F. Supp. 3d 956, 973 (N.D. Cal. 2019). "[G]eneral and vague declarations or promises in university publications" do not "creat[e] contractual obligations." *Kashmiri v. Regents of Univ. of Cal.*, 156 Cal. App. 4th 809, 832 (2007). As noted by Caltech, "a student must point to a *specific* promise that the university breached." (Dkt. No. 53 at 15.)

Here, Jane's claim for breach of contract is based solely on excerpts from Caltech's Sexual Misconduct Policy. Jane alleges that Caltech breached promises to complete investigations "within a reasonably prompt time frame"; to make a final decision "as soon as practicable"; to use investigators who are "impartial" and "trained regularly in issues related to sexual misconduct"; to "not ask questions or seek evidence of complainant's prior sexual conduct with anyone other than the respondent"; to not "retaliate" against students "for making a good-faith report of sexual violence"; and to "not tolerate intentional false reporting of incidents." (SAC ¶¶ 128, 131-34.) Jane alleges that as a result of "Caltech's breaches," she "was found at fault for sexual misconduct, which will be included as a permanent mark in her student record and must be disclosed to future graduate programs and employers."

9.

(SAC ¶ 135.) Even accepting these allegations as true, the Court finds that the alleged "promises" in Caltech's Policy are either not "sufficiently definite 'for the court to ascertain the parties' obligations and to determine whether those obligations have been performed or breached,'" *Sateriale v. R.J. Reynolds Tobacco, Co.*, 697 F.3d 777, 789 (9th Cir. 2012) (citation omitted), or Jane fails to allege sufficient facts to establish Caltech's breach.

Accordingly, the Court **GRANTS** Caltech's Motion to Dismiss as to Jane's breach of contract claim and **DISMISSES** her claim for breach of contract with leave to amend.

### B. Motion to Dismiss John Doe's Cross Claims.

Caltech moves to dismiss each of John's cross claims against Caltech for, among other things, failure to exhaust judicial remedies. (*See* Dkt. No. 34 at 3-5.)

"The doctrine of exhaustion of judicial remedies precludes an action that challenges the result of a quasi-judicial proceeding unless the plaintiff first challenges the decision though a petition for writ of mandamus." *Gupta v. Stanford Univ.*, 124 Cal. App. 4th 407, 411 (2004) (requiring plaintiff to file an administrative writ where "the gravamen of [the plaintiff's] claims [wa]s confined to the disciplinary process and the proceedings against him"). The remedy of administrative mandamus "is available if a *hearing* is required by statute, an organization's internal rules and regulations, or due process." *Pomona Coll. v. Superior Court*, 45 Cal. App. 4th 1716, 1727 n.10 (1996) (emphasis added). Thus, if the parties' relationship is governed by a college handbook or regulations, and the regulations require a hearing, then the hearing is one "required by law." *Id.*

The crux of Caltech's motion is that Caltech's policy "requires a hearing" because it "requires Caltech to conduct its disciplinary decisions using adversarial, evidentiary process." (Dkt. No. 53 at 3.) John, on the other hand, suggests that only live hearings qualify under section 1094.5. (*See* Dkt. No. 49 at 7-9.) But, as noted by Caltech, "courts and commentators have found that purely documentary proceedings

10.

can satisfy the hearing requirement of [] section 1094.5, so long as the agency is required by law to accept and consider evidence from interested parties before making its decision." (Dkt. No. 52 at 2 (quoting *Friends of the Old Trees v. Dep't of Forestry & Fire Prot.*, 52 Cal. App. 4th 1383, 1391 (1997)).) For example, in *300 DeHaro Street Investors v. Department of Housing and Community Development*, 161 Cal. App. 4th 1240, 1251 (2008), the court suggested that "purely documentary" hearings may fall within section 1094.5's hearing requirement if they include "an adversarial process in which the agency resolves disputed facts after affording interested parties an opportunity to present evidence." *See id.* at 1250 (finding decision based solely on "one party's unilateral submissions of information and documents, without taking and considering evidence from opposing parties" was not a hearing under section 1094.5).

Here, Caltech's "Sexual Misconduct Policy" provides that it "will conduct a fair, impartial, timely and thorough investigation that provides all parties with appropriate due process to ensure that the parties receive notice and an opportunity to be heard." (Dkt. No. 29, John's Cross-compl., Ex. A (hereinafter "Caltech's Policy") at 16.) Caltech's Policy sets forth a multi-step process. Caltech's Title IX Coordinator first makes "an initial assessment of the complaint" and implements interim measures as necessary.  (*Id.* at 17.)  From there, "the Title IX Coordinator may refer the complaint for formal investigation." (*Id.* at 18.)  The Title IX Coordinator conducts the formal investigation with the "purpose" of "determin[ing] the facts relating to the complaint." (*Id.* at 19.)

Pursuant to Caltech's Policy, the alleged victims and accused are "provided with a copy of the Sexual Misconduct policy and [are] informed of the relevant procedures" and are "notified in writing of the nature and alleged factual bases underlying the complaint." (*Id.* at 19-20.) Parties may object to specific investigators on the basis of conflicts of interest or impartiality "by notifying the appropriate Caltech official in writing" and "may have an advisor of their choice accompany them when reporting, or responding to, allegations of sexual misconduct." (*Id.* at 20.) The

11.

investigators must summarize the evidence in support of the complaint "to allow the [accused] the opportunity to respond." (*Id.*)  Caltech's Policy provides that the alleged victim and accused "will be given equal opportunity to present their cases separately to the investigator(s), to suggest others who might be interviewed, and to present other evidence." (*Id.*) Under the Policy, "[a]ll parties who participate in investigative interviews may submit written statements." (*Id.*) Following the investigation, investigators "report their findings and conclusion" to the Dean of Students, who "make[s] a decision concerning the resolution of the complaint, including imposing sanctions against the [accused], if appropriate." (*Id.* at 21.) The alleged victim and accused are then notified, in writing, about the outcome of the proceedings, "any change in the result that occurs prior to the result becoming final," and their "right to appeal and the procedures for appeal." (*Id.*)

      Because the Policy requires Caltech to conduct its disciplinary decisions through "an adversarial process" in which Caltech "resolves disputed facts after affording interested parties an opportunity to present evidence," *300 DeHaro St. Inv'rs*, 161 Cal. App. 4th at 1251, Caltech's disciplinary proceedings qualify as a hearing within the meaning of section 1094.5.

      The Court must now decide if John must seek relief under section 1094.5 in state court prior to bring suit under Title IX in federal court.  A court in this district concluded that it could exercise supplemental jurisdiction over a plaintiff's section 1094.5 petition "in the absence of Eleventh Amendment immunity." *See John Doe v. Cal. Inst. of Tech., et al.*, No. 2:18-cv-09178-SVW (JEMx) (Apr. 30, 2019).  The district court's analysis is persuasive and the Court is not aware of any circumstances that justify an alternative conclusion. Caltech has provided no authority suggesting that it is procedurally improper for Plaintiff to bring a section 1094.5 petition before this Court. Accordingly, the Court **GRANTS** Caltech's Motion to Dismiss and

1    **DISMISSES** John's cross complaint against Caltech with leave to amend.[4]

2    **V. CONCLUSION**

3         For the foregoing reasons, the Court **GRANTS** Caltech and Gilmartin's Motion to Dismiss Jane's Second Amend Complaint and **DISMISSES** causes of action one through thirteen against Caltech and causes of action five, ten, eleven, and twelve against Gilmartin with leave to amend. The Court **DISMISSES** Jane's first, second, third, fourth, sixth, seventh, eighth, and ninth causes of action against Gilmartin **with prejudice**. The Court **GRANTS** Caltech's Motion to Dismiss John's Cross Complaint and **DISMISSES** John's Cross Complaint with leave to amend. If Jane intends to file an amended complaint, she must do so within **twenty-one (21) days** of the date of this Order. Failure to amend will result in the dismissal of this case, with prejudice.

**IT IS SO ORDERED.**

Dated: August 13, 2019

                                             HONORABLE ANDRÉ BIROTTE JR.
                                             UNITED STATES DISTRICT COURT JUDGE

---

[4] Because the Court concludes that John failed to exhaust judicial remedies and dismisses John's Cross Complaint in its entirety, the Court does not reach Caltech's remaining arguments.