BRIAN DUNN, ESQ. (SBN 176502
Email: bdunn@cochranfirm.com
ANAHITA SEDAGHATFAR, ESQ. (SBN 217289)
Email: asedaghatfar@cochranfirm.com
**THE COCHRAN FIRM – CALIFORNIA**
4929 Wilshire Boulevard, Suite 1010
Los Angeles, California 90010-3856
Telephone: (323) 435-8205
Facsimile: (323) 282-5280

Attorneys for Plaintiff/Counter Defendant
JANE DOE

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>CALIFORNIA INSTITUTE OF TECHNOLOGY, a California Corporation; JOHN DOE, an individual; and DOES 1 through 100, inclusive,<br><br>Defendants.<br>_____<br>JOHN DOE, an individual,<br>Counter Claimant,<br>vs.<br><br>JANE DOE, an individual,<br>Counter Defendant, | Case No.  2:CV-1005-AB-KS<br><br>**PLAINTIFF JANE DOE'S OPPOSITION TO MOTION TO DISMISS FOURTH AMENDED COMPLAINT OF DEFENDANT CALIFORNIA INSTITUTE OF TECHNOLOGY**<br><br>District Judge: Hon. Andre Briotte Jr.<br><br>Hearing Date:  April 3, 2020<br>Time:            10:00 a.m.<br>Dept.:           7B<br><br>[Filed Concurrently With Opposition to Request For Judicial Notice] |

## TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

I.   INTRODUCTION/PROCEDURAL HISTORY . . . . . . . . . . . . . . . . .  1

II.  LEGAL STANDARS ON MOTIONS TO DISMISS . . . . . . . . . . . . .  3

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . .  4

   A.   Plaintiff has Alleged Sufficient Facts to Support Her
        Title IX Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

        1.   The purported interim measure Caltech implemented to
             keep John and Plaintiff separate was implemented one
             month after Plaintiff reported the rape and is yet another
             factor showing its deliberate indifference because it was
             unreasonable in light of the known circumstances . . . . . . 5

        2.   Interim measures a school implements is not determinative
             to a finding of deliberate indifference and Plaintiff has
             alleged a myriad of other allegations further and
             independently showing Caltech's deliberate indifference . 10

        3.   Plaintiff has independently alleged deliberate indifference
             due to Caltech's Conduct predating Plaintiff's report of
             rape . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

   B.   Plaintiff has Properly Pleaded her Cause of Action for
        Violation of Bus. & Prof. Code § 17200, et seq. . . . . . . . . . . .  24

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

i

# TABLE OF AUTHORITIES

## CASES

*Lazy Y Ranch LTD v. Behrens*
    546 F.3d 580, 588 (9th Cir. 2008) ............................. 3, 6

*Conservation Force v. Salazar*
    626 F.3D 1240, 1242 (9th Cir. 2011) ............................. 3

*Resuecom Corp. v. Google Inc.*
    562 F.3d 123, 127 (2d Cir. 2009) ............................. 3

*Braden v. Wal-Mart Stores, Inc.*
    588 F.3d 585, 595 (8th Cir. 2009) ............................. 4

*Star v. Baca*
    652 F.3d 1202, 1216 (9th Cir. 2011) ............................. 4

*Johnson v. State of Cal*
    652 F.3d 1202, 1216 (9th Cir. 2011) ............................. 4

*Cook, Perkiss & Kiehe v. N. Cal. Collection Service*
    911 F.2d 242, 247 (9th Cir. 1990) ............................. 4

*United States v. Corinthian Colleges*
    655 F.3d 984, 995 (9th Cir. 2011) ............................. 4

*Ashcorft v. Iqbal*
    556 U.S. 662, 679 (2009) ............................. 4

*Davis v. Monroe Cnty. Bd. of Educ.*
    526 U.S. 629, 650 (1999) ............................. 5

*Davis Next Friend LaShonda D. v. Monroe Cnty Bd. of Educ.*
    526 U.S. 629, 650 (1999) ............................. 5

*Takla v. Regents of the Univ. of Cal.*
    2015 WL 6755190 (C.D. Cal. Nov. 2, 2015) ............................. 5

*Lilah R. v. Smith*
    2011 U.S. Dist. LEXIS 81023, *15 (N.D. Cal. July 22, 2011) .......... 5

*Oden v. N. Marianas Coll*
    440 F.3d 1085, 1089 (9th Cir. 2006) ............................. 5

*Karasek v. Regents of the Univ. of Cal*
    948 F.3d 1150 (9th Cir. 2020) ............................. 9

*Vance v. Spencer County School District*
    231 F.3d 253, 260 (2000) ............................. 10, 11, 12, 15

*Doe v. Rutherford Cnty., Tenn., Bd. of Educ.*
   No. 3:13-cv-00328, 2014 WL 4080163, at *13
   (M.D. Tenn. Aug. 18, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

*Murrell v. Sch. Dist. No. 1*
   186 F.3d 1238 (10th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . .   11, 12

*Bruning v. Carroll Cnty. Sch. Dist.*
   486 F. Supp. 2d 892 (N.D. Iowa 2007) . . . . . . . . . . . . . . . . . . . . . . . .   11

*Doe v. Oyster River Co-op. Sch. Dist.*
   992 F. Supp. 467, 481 (D.N.H. 1997) . . . . . . . . . . . . . . . . . . . . . . . . .   11

*Doe A. v. Green*
   298 F. Supp.2d 1025, 1036 n.4 (D. Nev. 2004) . . . . . . . . . . . . . . . . . .   11

*Franklin v. Gwinnet County Public Schools*
   503 U.S. 60, 64 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

*Williams*
   477 F.3d 1282 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

*Doe v. Derby*
   451 F. Supp.2d 438 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

*Theno v. Tonganoxie Unified Sch. Dist. No. 464*
   377 F.Supp.2d 952, 977 (D. Kan. 2005) . . . . . . . . , , ,. . . . . . . . . . . . .   12

*Siewert v. Spencer-Owen*
   497 F. Supp. 2d 942 (S.D. Ind. 2007) . . . . . . . . . . . . . . . . . . .   12, 13, 14

*Canty v. Old Rochester Reg'l Sch. Dist*
   66 F.Supp.2d 114 (D. Mass. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

*Chevron, U.S.A., Inc., v. Nat. Resources Def. Council, Inc.*
   467 U.S. 837, 865-66 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

*Bruneau ex rel. Schofield v. S. Kortright Cent. Sch. Dist.*
   163 F.3d 749, 761 (2nd Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

*Fitzgerald v. Barnstable Sch. Comm.*
   555 U.S. 246 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

*Lilah R.*
   2011 U.S. Dist. LEXIS, at *17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

*Simpson v. University*
   500 F.3d 1170 (10th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

*Smith v. State Farm Mutual Automobile Insurance Co., et al.*
   (2001) 93 Cal.App.4th 700 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

*Bank of the West v. Superior Court*
   (1992) 2 Cal.4th 1254, 1266 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

## **STATUTES**

20 U.S.C. § 1681(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

Bus. Prof. Code § 17200   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3, 24, 25

Fed R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

Fed R. Civ. P. 15(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

## I.   **INTRODUCTION/PROCEDURAL HISTORY**

Plaintiff is a 20 year old Asian American female who was, and still is, an undergraduate student at Defendant California Institute Of Technology ("Caltech"). Defendant John Doe ("John") is a Caucasian 21 year old male who was, and still is, an undergraduate student and star athlete at Caltech. This is a case involving the intentional coercion, false imprisonment, sexual assault and rape of Plaintiff, on or about August 17, 2017 in a dorm at Caltech at the hands of John, the subsequent botched Title IX purported "investigation" conducted by Caltech and the hostile educational environment created by Caltech which, to date, continues to exist. Kevin Gilmartin was and is the Dean of Undergraduate Students at Caltech and was in charge of overseeing Caltech's purported Title IX investigation at issue in this case.

At the outset, Caltech's Motion to Dismiss Plaintiff's Fourth Amended Complaint ("FAC") is wholly improper in that it: repeatedly and impermissibly includes allegations that are *outside the four corners* of the FAC (which this Court should not consider as a matter of law), it outright misconstrues the facts as alleged by Plaintiff in the FAC and it distorts many of Plaintiff's allegations. Caltech also misconstrues many of the cases upon which it relies. Perhaps more egregiously, Caltech persists in claiming that Plaintiff filed this lawsuit not because she was raped and then re-victimized by Caltech by way of its botched Title IX investigation, but simply because she was displeased with Caltech's findings. This is egregious victim blaming at its best as simple cursory reading of the FAC proves this is not the case. Caltech persists to erroneously argue that merely because it conducted a purported investigation, no matter how inadequate and flawed it was, no matter how badly it failed to comply with Title IX requirements, that it is somehow immune from liability.

Ultimately, Caltech's argument that Plaintiff has not cured the pleading deficiency noted by this Court with respect to her Title IX claim is false. As described in detail below, Plaintiff has now, in her FAC addressed the pleading deficiency noted by the Court in its 2/4/20 Order on Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint ("TAC") *See* Dkt. No. 94 ("MTD Order"). Namely, the Court In its MTD Order, (and relevant to Defendant's current Motion to Dismiss), held that in her TAC, Plaintiff failed to properly allege Caltech acted with deliberate indifference in support of her Title IX claim because Plaintiff did not allege "whether, when, and to what extent Caltech implemented interim measures to separate John and [Plaintiff]." *See* MTD Order at pg. 6.  Plaintiff now alleges in her FAC ¶ 27 it took Caltech over one month after Plaintiff reported the rape to impose the purported interim measure of a "no-contact" order, telling John he may not return to Fleming dorm during the investigation and that if John finds himself near Plaintiff, it is his responsibility to leave.  As set forth in more detail below, in light of the fact that at this time John had not made his complaint against Plaintiff, that Caltech is a small school of approximately 1,000 students with sole shared facilities, and ***that Plaintiff continued to repeatedly run into John on campus where she was subjected to further harassment and Caltech did nothing to prevent same***, Caltech's interim measure shows its deliberate indifference.

It is notable that the imposition of  interim measures and the sufficiency of same is only *one* of a myriad factors(and in fact a minor factor) to be considered in determining whether a school acted with deliberate indifference. It is not dispositive. As discussed in detail below, Plaintiff has alleged a multitude of other facts showing deliberate indifference by Caltech.  As such, Plaintiff has cured the pleading deficiency noted by the Court, and in alleging these numerous other facts, has now

more than sufficiently pleaded deliberate indifference as a matter of law.

Moreover, Plaintiff has alleges sufficient facts showing deliberate indifference upon the theory that Caltech was deliberately indifferent to the institutional problem of sexual violence on campus. It is notable that a showing of deliberate indifference does not *also* require allegations that a school was deliberately indifferent to prior harassment; rather, this is just another theory that would support a finding of deliberate indifference. As such, Plaintiff has alleged further facts which support another theory supporting the deliberate indifference element of her Title IX claim as a matter of law.

Lastly, because Plaintiff's predicate cause of action for Violation of Title IX does not fail, Defendant's motion to dismiss the §17200 claim must be overruled.

## II.   <u>LEGAL STANDARDS ON MOTIONS TO DISMISS</u>

A motion pursuant to <u>Federal Rule of Civil Procedure</u> 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. In considering such a motion, a court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). A district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.' " *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988))."When reviewing a motion to dismiss, a court must 'accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally.'" *Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2d Cir. 2009) (*quoting Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir.2001)). All reasonable

inferences from the facts alleged are drawn in plaintiff's favor in determining whether the complaint states a valid claim. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009). That is, when a complaint's allegations are capable of more than one inference, the court must adopt whichever plausible inference supports a valid claim. *Star v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Further, "the rule of liberal construction is 'particularly important in civil rights cases.' " *Johnson v. State of Cal.*, 207 F.3d 650, 653 (9th Cir. 2000) (quoting *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987)). If the allegations in the Complaint are insufficient to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Service*, 911 F.2d 242, 247 (9th Cir. 1990). This is because, as a general rule, leave to amend a complaint that has been dismissed should be freely granted. Fed. R. Civ. P. 15(a); see also *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 701 (9th Cir. 1990) ("The standard for granting leave to amend is generous."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will. . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## III.   **ARGUMENT**

### A.   **Plaintiff Has Alleged Sufficient Facts To Support Her Title IX Claim**

20 U.S.C. § 1681(a) ("Title IX") states in part that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The Supreme Court has

made clear that Title IX's prohibition of sex discrimination provides students a right to be free from student-on-student harassment, including acts of sexual violence. *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999).

1.  **The purported interim measure Caltech implemented to keep John  and Plaintiff separate was implemented one month after Plaintiff reported the rape and is yet another factor showing its deliberate indifference because it was unreasonable in light of the known circumstances**

In order for an educational institution to be held liable under Title IX, a plaintiff must prove that the institution acted with deliberate indifference. *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999). Under this principle, a defendant school is liable under Title IX only if the school's response to known acts of harassment is "clearly unreasonable *in light of the known circumstances*." *Id.* at 648 (emphasis added). )), "[U]nder this standard, if an institution takes timely and reasonable measures to end the harassment," it is not liable. . . but "[i]f on the other hand, an institution either fails to act, or *acts in a way which could not have reasonably been expected to remedy the violation*, then the institution is liable for what amounts to an official decision not to end discrimination." *Takla v. Regents of the Univ. of Cal.*, 2015 WL 6755190 (C.D. Cal. Nov. 2, 2015 (emphasis added) . Critically, *this is a fact-intensive question, often reserved for the jury*, *see e.g., Lilah R. v. Smith*, 2011 U.S. Dist. LEXIS 81023, *15 (N.D. Cal. July 22, 2011),(emphasis added) and the question turns on "whether a reasonable fact-finder could conclude that the College's response was 'clearly unreasonable in light of the known circumstances,' " *Oden v. N. Marianas Coll.*, 440 F.3d 1085, 1089 (9th Cir. 2006).

To address the pleading deficiency noted in the MTD Order at pg. 6, (whether,

when and to what extent Caltech implemented interim measures an effort to separate Plaintiff and John) Plaintiff now alleges in her FAC ¶ 27 that "[d]espite Plaintiff's _**reporting of the rape to Caltech on August 17, 2017**_, and further showing the unreasonableness of Caltech's response in light of the circumstances, and thus its deliberate indifference, John was still permitted by Caltech to remain on campus; a small campus (a mere 0.4 miles end to end) with less than 1,000 students and with one shared gym and one cafeteria. _**Rather, on September 27, 2017,[1] over one month after Plaintiff reported the rape, Caltech imposed the purported interim measure of a "no-contact" order, told John Doe he may not return to Fleming dorm during the investigation and that if John Doe finds himself near Plaintiff, it is his responsibility to leave.**_ Caltech did not take any steps to have John Doe removed, even for a short period of time and pending a preliminary investigation into Plaintiff's allegations. This was so _despite the fact that initially it was only Plaintiff who lodged a rape claim against John Doe. It was not until over two months into the investigation that John Doe lodged his rape claim against Plaintiff._" (The underlined/italicized allegations are the newly made allegations in the FAC).

In its Motion addressing  Caltech's interim measure Caltech impermissibly sets forth statements that clearly fall outside of and in fact contradict, the four corners of the FAC. These allegations must be stricken and not considered by this Court. _Lazy Y. Ranch, supra._ Namely, _**Plaintiff does not allege in her FAC**_: that the purported interim measure was implemented "two weeks" after Plaintiff's complaint "and before Caltech's academic year began" (Caltech Motion, pg. 1, lines 24-26); that Caltech had

---

[1] Plaintiff notes that the date of "September 27, 2017" should  be "September 22, 2017." This was a typo made when drafting the FAC .

6

a "five-month long investigation" (Caltech Motion, pg. 2, line 2) that "On Sept. 5, 2017, Jane reported the assault to Title IX and Caltech appointed two faculty investigators that same day," (Caltech Motion, pg. 1, lines 16-17); that "two weeks after Jane reported the assault and three days prior to the start of the fall term, Caltech informed Jane of the interim measures" (Caltech Motion, pg. 3, lines 19-21) the interim measure was implemented "within days of Jane filing her complaint" (Caltech Motion, pg. 12, line 22).

Plaintiff has alleged facts demonstrating that this purported interim measure taken over one month after Plaintiff's complaint was "clearly not reasonable in *light of the known circumstances* and thus Caltech acted *in a way which could not have reasonably been expected to remedy the violation.*" Namely, to add context and show that a plausible inference could be made that the interim measure was clearly not reasonable in light of the circumstances, Plaintiff alleges in her FAC the makeup of the Caltech campus (including the small size and small student population) as well as the fact that *Plaintiff did run into John on various occasions causing her to be subjected to further harassment.* In the FAC ¶ ¶ 27-28 Plaintiff alleges "John was still permitted by Caltech to remain on campus; a small campus (a mere 0.4 miles end to end) with less than 1,000 students and with one shared gym and one cafeteria.. . .Caltech did not take any steps to have John removed, even for a short period of time and pending a preliminary investigation into Plaintiff's allegations. This was so despite the fact that initially it was only Plaintiff who lodged a rape claim against John. It was not until over two months into the investigation that John lodged his rape claim against Plaintiff. This was so despite Plaintiff's repeated protestations to Caltech that she felt scared and unsafe having to be and live on such a small campus with John. While failure to remove an accused student rapist from campus pending an

investigation may have been deemed reasonable (although highly unlikely) for a large university with thousands of students such as UCLA (with 33,000 undergraduate students) or USC (with 44,000 undergraduate students), it was clearly unreasonable due to the small size of Caltech and the shared facilities, ***where it was inevitable that Plaintiff and John run into one another, which they did and which caused Plaintiff further distress and fear. Caltech was put on notice of this, Plaintiff complained and asked for accommodations in this regard yet Caltech did nothing*** and Plaintiff's requests for accommodations were wholly ignored. This amounted to an official decision by Caltech not to end the discrimination. Indeed, due to the small size of the Caltech campus, the small student population and the shared facilities such as the one cafeteria and the one gym, there would have been no interim measures Caltech could have taken, short of removing John from campus, even temporarily, that would have had the effect or attempted effect of keeping Plaintiff and John separate. This is even more so in light of the fact that Plaintiff, who was on the tennis team, (the team trained at the gym), and John, who was on the baseball team (the team also trained at the gym) would necessarily see one another, ***and in fact did see one another***. Moreover, the baseball field and tennis court are directly adjacent to one another, making it also impossible for Plaintiff and John to be kept separate. As for the one cafeteria, the same reasoning applies; there is only one place for Plaintiff and John to eat their meals. As such, Caltech failed to take measures, even temporarily pending its investigation that would even attempt to keep Plaintiff and John separate, showing the unreasonableness of Caltech's response in light of the circumstances."

Critically, Plaintiff further alleges that she "***has run into John on campus on several occasions*** [where he] glared at Plaintiff, stared her down, making her feel scared and intimated," and that Plaintiff ***ran into John on another occasion*** in class

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC

where he "glared at Plaintiff, refused to look away, making her feel intimidated and scared. . [thus causing her to] suffer further harassment due to Caltech's deliberate indifference and/or being made vulnerable to same." FAC ¶ ¶ 29, 46.

Caltech heavily relies upon *Karasek v. Regents of the Univ. of Cal.,* 948 F.3d 1150 (9th Circ. 2020) in arguing that Plaintiff has not alleged deliberate indifference based upon Caltech's conduct in response to Plaintiff's complaint of rape. However, *Karasek* is wholly distinguishable from the instant case in that with each of the three plaintiffs, the court noted that there were no allegations that the school failed to ***"preclude further harassment"*** with respect to the interim measures. With regard to the first plaintiff, the court held that she "never interacted with [the accused] again after the assault. . .[she] never told [the school] that she regularly saw [the accused] and as a result, [the school] had no reason to know preventive measures were necessary to protect [her] from future harassment." *Id.* at 1166. Regarding the second plaintiff, the court held that she never alleged that the interim measures "were ineffective.. . indeed, [she] identifies no instance where she saw [the accused] again after reporting the sexual assault." *Id.* at 1167. Regarding the third plaintiff, the court held that "it is unclear what interim protective measures [the school] should have imposed [since the perpetrator] was an independent third party with no official relationship to [the school] and [plaintiff] never told [the school] that she feared meeting him on campus or that she wanted a no contact order. . [and plaintiff] never claims she saw [the accused] again after the assault." *Id.* at 1168. Clearly, these facts differ from this case where Plaintiff has alleged that she ran into John ***repeatedly*** on campus (where he in fact subjected her to further harassment), that she advised Caltech of this and her fear for her safety repeatedly, that she wanted him removed from campus, and that Caltech did nothing about it.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC

1   Therefore, while it is true that a university's failure to remove an accused

2   student from campus does not in and of itself support a Title IX violation, failure to

3   do so, in light of the circumstances, including a student advising the school that she

4   continued to run into the accused, can evidence deliberate indifference as it does here.

5   As Plaintiff has alleged, in light of the extremely small size of the campus, the shared

6   facilities, the fact that ***Caltech was made aware that its interim measure was not***

7

8   ***keeping Plaintiff and John separate*** (nor could it reasonably purport to do so),

9   Caltech acted in a way which could not have reasonably been expected to remedy the

10   violation as a matter of law.

11          **2.    Interim measures a school implements is not**
               **determinative to a finding of deliberate indifference and**
12             **Plaintiff has alleged a myriad of other allegations**
               **further and independently showing Caltech's deliberate**
13             **indifference**

14

15   Caltech again incorrectly argues that simply because it implemented a

16   purported interim measure, no  matter how unreasonable it was under the

17   circumstances (which it was here), that it cannot be found to have acted with

18   deliberate indifference. Caltech also incorrectly argues that as long as it conducted an

19   alleged investigation into Plaintiff's claims, no matter how flawed or unreasonable

20   the investigation was, it could not have acted with deliberate indifference. However,

21   courts have repeatedly rejected the argument that "as long as a school district does

22   something in response to harassment, it has satisfied the [deliberate indifference]

23   standard." *Vance v. Spencer County School District,* 231 F.3d 253, 260 (2000); *see*

24   *also, e.g., Doe v. Rutherford Cty., Tenn., Bd. Of Educ.,* No. 3:13-cv-00328, 2014 WL

25   4080163, at *13 (M.D. Tenn. Aug. 18, 2014) ("The mere fact that a school does

26   something in response to a harassment claim does not per se insulate it from liability

27

28

---

10

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC

under Title IX.")

Again, interim measures a school implements is not by any means determinative to a finding of deliberate indifference in any event as evidenced by the cases cited throughout this Opposition. It is a factor to consider. As argued above Caltech's purported interim measure, resulting in Plaintiff running into John repeatedly on campus thereafter, was in no way reasonable. Moreover, courts have routinely recognized the following as evidence of "deliberate indifference" within the meaning of the standard outlined in *Davis*:

(1) An institution's failure to properly investigate a claim. *See Jennings v. Univ. of N.C.*, 482 F.3d 686, 694 (4th Cir. 2007); *Vance v. Spencer County Pub. Sch. Dist.*, 231 F.3d 253, 259 (6th Cir. 2000); *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238 (10th Cir. 1999); *Bruning v. Carroll Cmty. Sch. Dist.*, 486 F. Supp.2d 892 (N.D. Iowa 2007); *Doe v. Oyster River Co-op. Sch. Dist.*, 992 F. Supp. 467, 481 (D.N.H. 1997). Conducting an investigation, but nothing more. *Vance*, 231 F.3d at 260; *Doe A. v. Green*, 298 F.Supp.2d 1025, 1036 n.4 (D. Nev. 2004). Plaintiff alleges in her FAC ¶¶ 31-37, 174 detailed allegations showing how Caltech failed to properly investigate under Title IX and even under its own policies and procedures. Plaintiff alleges Caltech "wholly failed to comply with Title IX at every juncture. . .[and] with their own policies and procedures for the investigation of campus sexual assaults" such violations included "questioning Plaintiff, on at least three occasions, about Plaintiff's sexual conduct with her ex boyfriend and with other men [and questioning] John's girlfriend and impermissibly asking her questions about her sexual conduct with John" and Caltech then explicitly and admittedly used those statements derived from the illegal questions "to conclude that Plaintiff's allegation that John performed oral sex upon her without her consent was untrue." FAC ¶ 33.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC

(2) An institution's failure to notify law enforcement of a criminal act, or affirmatively discouraging the victim from reporting the act to law enforcement. *See Franklin v. Gwinnet County Public Schools*, 503 U.S. 60, 64 (1992); *Vance*, 231 F.3d at 262; *Murrell*, 186 F.3d at 1238. Plaintiff alleges in her FAC ¶ 26, *"no one at Caltech reported the rape to the police nor did Caltech advise Plaintiff to do so or advise her that she had a right to do so.* Title IX coordinator Felicia Hunt even attempted to bribe Plaintiff in an effort to silence her and discourage her from reporting the rape to police and in hopes of getting her to drop her rape claim made to Caltech by offering to take Plaintiff shopping for Lululemon brand clothing "on her dime" and to bring Plaintiff "comfort food" for her to eat." Plaintiff also alleges in her FAC ¶ 34 "During its purported investigation, Caltech engaged in a pattern and practice of repeatedly of re-victimizing Plaintiff by intimidating her, accusing her of lying and blaming her for what had occurred and the rape, all in attempts to silence Plaintiff and force her to drop her claims."

(3) An institution's failure to meaningfully and appropriately discipline the student-assailant. *See Williams*, 477 F.3d 1282; *Vance*, 231 F.3d at 262; *Murrell*, 186 F.3d 1238; *Doe v. Derby*, 451 F.Supp.2d 438 (2006); *Theno v. Tonganoxie Unified Sch. Dist. No. 464*, 377 F.Supp.2d 952, 977 (D. Kan. 2005); *Doe v. Oyster River Coop. Sch. Dist.*, 992 F.Supp. at 481; *Siewert v. Spencer-Owen*, 497 F. Supp. 2d 942 (S.D. Ind. 2007). Plaintiff alleges in her FAC ¶ ¶ 32, 175(d) that Caltech placed no additional restrictions upon John (even during time before he lodged his complaint against Plaintiff), and that the sanctions imposed upon John based on Caltech's findings that he violated Caltech's Sexual Misconduct Policy "are highly disproportionate to the findings. . . Caltech concluded that John engaged in sexual contact (kissing) without Plaintiff 's consent and engaged in deceitful and

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC

1    manipulative conduct by promising information in exchange for sexual favors.

2    Caltech also concluded that John took advantage of Plaintiff's vulnerable and

3    intoxicated state and took unfair advantage of her. Despite these findings, John was

4    not expelled, suspended or even placed on a voluntary/involuntary leave. Rather,

5    shockingly, Caltech imposed essentially the same punishment upon him as it did upon

6    Plaintiff, when clearly (even based upon Caltech's own investigation) his conduct

7    was far more egregious."

8

9        (4)   An institution's minimization of the discriminatory import of sexual

10    assault. *See Jennings*, 482 F.3d at 700; *Siewert*, 497 F. Supp. 2d at 954. If the

11    assailant, and student body at large, are left to believe that the institution tacitly

12    approved the harassing behavior. *Siewert*, 497 F.Supp.2d at 954; Plaintiff alleges in

13    her FAC ¶¶ 13-14 Caltech's widely known reputation for minimizing and not taking

14    seriously sexual assaults. Plaintiff alleges Caltech "promoted and enabled a rape

15    culture" to exist on campus, for "having a history of failing to support survivors of

16    sexual assault, for victim blaming, brushing under the rug incidents of sexual

17    violence on campus, for not properly conducting Title IX investigations," and that an

18    article was even published in the Caltech newspaper criticizing Caltech's poor

19    handling of sexual assaults. Plaintiff also alleges in FAC ¶ 26 that Ms. Hunt's

20    conduct "amounted to Caltech's minimization of the discriminatory import of sexual

21    assault." Plaintiff further alleges in FAC ¶ 38 that During a meeting with Gilmartin,

22    he "took a very harsh tone with Plaintiff and began defending John and blaming

23    Plaintiff for her own rape. Gilmartin told Plaintiff that Caltech would not suspend

24    John because John "had made a compelling argument that he needed his support

25    system to recover from the issues that caused the incident." Gilmartin further told

26    Plaintiff that it was Plaintiff's "vulnerability" that caused the incident/rape and

27

28

13

Plaintiff needed to make sure "nothing like that happened again." Plaintiff was in utter shock that Gilmartin was sympathizing with and defending John all the while blaming Plaintiff and her "vulnerability" for the rape and telling Plaintiff she was the one that needed to fix herself."

(5)  An institution's treatment of the victim and perpetrator equally. *Siewert*, 497 F.Supp.2d at 954. Plaintiff alleges in her FAC that not only were Plaintiff and John not treated equally (even though Caltech contends it treated both parties equally), but Plaintiff was in fact treated worse at every juncture of the Title IX investigation (even prior to John lodging his claim against Plaintiff). Plaintiff alleges "Caltech treated John more favorably than Plaintiff. There were no additional restrictions placed upon John and in fact the restrictions placed upon Plaintiff by Caltech had the effect of punishing her and depriving her access to the education opportunities and benefits of Caltech;" (FAC ¶ 32) "Caltech treated John differently and more favorably than Plaintiff the entire time it conducted its purported investigation because Plaintiff is a female and John is a male. John was not accused of lying, (as Plaintiff immediately and continually was), even though his story changed multiple times and was replete with inconsistencies and physical impossibilities. Plaintiff believes that all of the witnesses John identified were interviewed by Caltech. Caltech did not interview all of the witnesses Plaintiff identified for them. . . [m]oreover, Plaintiff was not provided with equal access to her file or the Title IX documents, despite her numerous requests;" (TFAC ¶ 34) "Caltech failed to allow Plaintiff to have similar and timely access to information as it allowed John, rendering the purported investigation inequitable. Rather than being permitted to review the investigatory documents as John was and as permitted by Caltech's own policy, Plaintiff was summoned to Gilmartin's office. . .[where]Gilmartin, in an

attempt to further intimidate and humiliate Plaintiff, told her that he would "read" the documents to her rather than allow her to read them herself. Plaintiff was shocked, embarrassed and asked once again that she be permitted to read the documents herself per Caltech policy and as John was permitted to do. Perhaps even worse, Plaintiff critically *was not permitted to provide her input or comments to the draft or final report as John was able to do*, further rendering the purported investigation inequitable. . ." (FAC ¶ 37).

(6) An institution's continued use of "ineffective methods [to timely and reasonably end the harassment]to no acknowledged avail." *Vance*, 231 F.3d at 261; *Canty v. Old Rochester Reg'l Sch. Dist.*, 66 F.Supp.2d 114 (D. Mass. 1999). Plaintiff alleges in her FAC ¶ ¶ 12-14 the alarmingly high rate of sexual assaults on Caltech's campus (22 reported sexual assaults on its campus of only 1,000 students in 2016 alone); that Caltech "has a reputation for promoting and enabling a "rape culture" to exist on campus; so much so that on or about 2016, concerned Caltech students protested at Caltech and posted flyers around campus and in the dorms demanding that the school remedy this issue and take acts of sexual violence seriously. Similarly, Caltech has (and prior to Plaintiff's rape had) a history of failing to support survivors of sexual violence, for victim blaming, for brushing under the rug incidents of sexual violence on campus ***and for not properly conducting Title IX investigations***. Indeed, Gilmartin has (and prior to Plaintiff's rape had) also been publicly criticized for same. Caltech has (and prior to Plaintiff's rape had) a documented history of failing to comply with Title IX and its own policies as it relates to investigations of sexual assault and rape on campus. . .that on or about May 22, 2018, an article was published in Caltech's newspaper entitled "Shepard [VP of Student Affairs] and Gilmartin Fail to Support Survivors of Sexual Violence," where Caltech was again criticized for its

15

poor handling of sexual assault investigations. Further evidencing the fact that Caltech utilized ineffective methods, Plaintiff alleges, "Caltech's use of untrained and ill-equipped Caltech professors as "investigators" to investigate Plaintiff's rape amounted to its continued use of ineffective methods to no acknowledged avail, further showing the unreasonableness of its conduct in light of the circumstances and thus its deliberate indifference. Namely. . .Caltech had, prior to Plaintiff's rape, (and to date) a disproportionately high rate of sexual assaults on campus *and in its dorms*. Caltech had received public criticism for its failure to prevent sexual assaults, which resulted in part due to Caltech's failure to properly investigate (under Title IX) and thus remedy and prevent sexual assaults on its campus. In fact, and further evidencing this, Plaintiff alleges that subsequent to the filing of this lawsuit, and in response to the repeated failures of its Title IX office, Caltech has wholly revamped and expanded its Title IX office and reformed how it will conduct Title IX investigations. Caltech has hired a new head of Title IX, it has hired individuals solely charged with investigation of Title IX claims (no longer using professors or the dean to investigate) and will work in conjunction with outside entities such as JPL to ensure compliance with its Title IX obligations." FAC ¶ 36.

Moreover, in an effort to provide institutions with information to assist them in meeting their obligations under Title IX, the Department of Education, the entity to whom Congress delegated the authority to implement and enforce Title IX, promulgated a set of directives in its Dear Colleague Letter of 2011 ("DCL") *See* Office for Civil Rights, Office for Civil Rights, Dep't of Education, Dear Colleague Letter: Sexual Violence (Apr. 4, 2011) (available *www.ed.gov/ocr/letters/colleague-201104.pdf*) at 3. The failure to comport with these DCL directives demonstrates a school's deliberate indifference. The DCL is particularly significant, given the

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC

deference afforded to the interpretation of a statute by an agency responsible for its implementation and enforcement. *See Chevron, U.S.A., Inc. v. Nat. Resources Def. Council, Inc.*, 467 U.S. 837, 865-66 (1984) (acknowledging that when an agency has interpreted a statute in a reasonable way, "federal judges -- who have no constituency -- have a duty to respect legitimate policy choices made by those who do.")

As alleged in her FAC, Caltech has failed to comply with essentially all of these DCL directives, further showing Caltech's deliberate indifference as a matter of law. Specifically, with respect to addressing a report of sexual assault, the DCL states that:

1. "Title IX requires the school to take *immediate action* to eliminate the harassment, prevent its recurrence, and address its effects." *DCL, supra*, at 4 (emphasis added). This includes the requirement that, upon receiving a complaint of sexual assault, the institution must inform the complainant of their right to file a criminal complaint, and not discourage them from doing so. *Id.* at 10. As set forth above, Plaintiff alleges in her FAC that Caltech did none of this and instead it discouraged Plaintiff from reporting the rape.

2. Further, a school's response should be prompt and equitable. *Id.* at 9. The institution must conduct its own investigation, regardless of the status of any criminal investigation, and take immediate steps to protect the complainant and the school community at large. *Id.* Based on the experience of the Dept. of Education, the DCL estimates that a resolution should be achieved within 60 days of receiving a complaint of sexual assault. *Id.* at 12. As Plaintiff alleges in her FAC ¶ 35, Caltech's response "was neither prompt nor equitable" in that the investigation took almost one year, in violation not only of the DCL directives and Caltech's own policies. *(See Bruneau ex rel. Schofield v. S. Kortright Cent. Sch. Dist.*, 163 F.3d 749, 761 (2nd Cir.

1998) *pet. cert. denied* 526 U.S. 1145, *abrogated on other grounds by Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009) (holding that "[a] remedial action taken following a lengthy and unjustified delay therefore, cannot be deemed 'appropriate.') Moreover, as set forth above, Plaintiff alleges in her FAC that the investigation was far from equitable in that Caltech treated John more favorably than Plaintiff at every juncture. Plaintiff also alleges that in failing to remove John from campus, (especially due to the small size of the campus and the alarming amount of rapes on campus) even temporarily and pending its investigation, Caltech failed to take steps to protect Plaintiff and the school community at large. FAC ¶ 27.

3.  With regard to the actual investigative procedure, the DCL requires that: the school provide both parties with an equal opportunity to present witnesses and evidence, and to have similar and timely access to any information to be used by either party at the hearing. As Plaintiff alleges, Caltech does not provide hearings as part of its Title IX investigations, or on appeals FAC ¶ 45 but as part of the investigative process, "Plaintiff believes that all of the witnesses John identified were interviewed by Caltech. Caltech did not interview all of the witnesses Plaintiff identified for them." FAC ¶ 34 "Caltech refused to interview witnesses Plaintiff identified and failed to consider evidence Plaintiff provided. Namely, a crucial piece of evidence, an apology text message from John sent to Plaintiff the day after she was raped was provided by Plaintiff to the investigators. Yet no mention of this text was mentioned in any of the reports nor was Plaintiff ever asked about the text message by investigators. One of the most important witnesses that would help support Plaintiff's allegations, to whom Plaintiff sent a text message asking for help *right after* she was raped was never contacted or interviewed. Other witnesses Plaintiff identified for Caltech, who could attest that John made inappropriate comments about Plaintiff

18

showering last year, (comparing Plaintiff to Hitler) were not interviewed by Caltech either." FAC ¶ 65 (h).

Plaintiff further alleges that "Caltech failed to allow Plaintiff to have similar and timely access to information as it allowed John. . . [r]ather than being permitted to review the investigatory documents as John was and as permitted by Caltech's own policy" Gilmartin read Plaintiff the documents and "Plaintiff critically *was not permitted to provide her input or comments to the draft or final report as John was able to do*. . ." FAC ¶ 37. Plaintiff further alleges she "was not provided with full and equal access to her file, the investigative reports or the Title IX documents, despite her numerous requests... Plaintiff was permitted to only review some (not all) of the investigative documents, and. . . Caltech did not allow Plaintiff to make copies of the documents and in fact explicitly forbade her from doing so." FAC ¶ 39.

4. Anyone involved in the grievance procedure must be adequately trained on handling complaints of sexual harassment/violence. *DCL, supra.* at pg. 11-12. Plaintiff alleges in her FAC ¶ 35 that "Caltech did not ever retain independent investigators. Rather, Caltech utilized two clearly and admittedly untrained and ill equipped Caltech employees (one professor and one associate dean), to investigate this rape case," and that upon Plaintiff's mother stating her concerns about the lack of training of these investigators, Ms. Hunt stated "that's what you get at Caltech," . . .and Ms. Hunt knew that the investigators were not qualified or properly trained, and nothing was done to remedy this matter." FAC ¶ 65 (e). To be sure, Plaintiff further alleges that "subsequent to the filing of this lawsuit, and in response to the repeated failures of its Title IX office, Caltech has wholly revamped and expanded its Title IX office and reformed how it will conduct Title IX investigations. Caltech has hired a new head of Title IX, ***it has hired individuals solely charged with investigation of***

***Title IX claims (no longer using professors or the dean to investigate)*** and will work in conjunction with outside entities such as JPL to ensure compliance with its Title IX obligations." FAC ¶ 36.

In sum, Plaintiff alleges more than sufficient facts demonstrating that Defendant acted with deliberate indifference at every juncture from the moment Plaintiff reported the rape, and to even date. *See generally, Lilah R.*, 2011 U.S.Dist.LEXIS, at *17 (holding that, under factually similar circumstances, a motion to dismiss for want of deliberate indifference could not be properly granted because it was impossible to determine whether the school's actions were sufficient in the context of the plaintiff's specific allegations).

### 3. Plaintiff has independently alleged deliberate indifference due to Caltech's Conduct predating Plaintiff's report of rape

The deliberate indifference inquiry is not limited to an educational institution's conduct postdating a report of sexual assault. ***A school's generally inadequate response to a known, institutional problem of sexual violence can equate to deliberate indifference for purposes of Title IX.*** *Simpson v. University*, 500 F.3d 1170 (10th Cir. 2007). (emphasis added). In *Simpson*, two female students at the University of Colorado Boulder were sexually assaulted by members of the school's football team, and non-student football recruits at an off-campus party. *Id.* at 1173. The women filed a lawsuit against the school, alleging violation of Title IX, among other allegations. *Id.* at 1174. The trial court granted summary judgment in favor of the school, on the grounds that the school did not have actual notice of these particular assaults, and therefore, could not have acted with "deliberate indifference" to the assaults. *Id.* The appellate court reversed, holding in part, that a school's

policies which have the effect to promote the possibility of sexual violence, their inaction in the face of knowledge that sexual violence is prevalent, and/or their inaction despite actual knowledge of sexual assaults that have occurred, amounts to deliberate indifference within the meaning of Title IX. *Id*. at 1184. Specifically, the court noted that in order to determine the existence of "deliberate indifference," the relevant inquiry is whether the risk of a sexual assault occurring within a given context was obvious. *Id*. at 1180-81. The court held that the risk in *Simpson* was obvious because the school had general knowledge of the substantial risk of sexual assaults occurring during recruiting trips, the school specifically knew that sexual assaults had occurred during prior recruiting visits, and the school nevertheless maintained policies and procedures that proved ineffective and inadequate in deterring sexual violence during recruiting efforts. *Id*. at 1184. Based on this evidence alone, and not on any actions taken or not taken by the school in response to the plaintiffs' actual sexual assaults, the court acknowledged that a jury could infer that the need for different, more effective training and policies was so obvious, and the inadequacy of the present policies and procedures so likely to result in sexual violence, that in maintaining the status quo, the school acted with deliberate indifference. *Id*. at 1184-85.

Caltech again heavily relies upon *Karasek* this time in arguing that Plaintiff's pre assault deliberate indifference theory fails. However, this case actually supports Plaintiff's argument that she has alleged sufficient facts supporting deliberate indifference based on Caltech's pre assault conduct. In fact, the *Karesek* court set forth an ever *more liberal* standard than *Simpson* as it relates to a school's pre assault conduct.  Namely, in *Karasek*, the court held "a school need not have actual knowledge of a specific instance of sexual misconduct or responded with deliberate

indifference to that misconduct before liability may attach" in a pre assault theory of deliberate indifference. *Karasek*, 948 F.3d. at 1169. Moreover the court held "where the official policy is one of deliberate indifference to a known overall risk. . .notice of a particular harassment situation and an opportunity to cure it are not predicates for liability." *Id.* As a result, the Court held that the defendant school's argument (the school relied upon *Simpson*[2] *supra*) that the students must allege "a specific problem in a specific program" fails and that "Title IX liability [attaches] when a school's. . .policy is one of deliberate indifference to sexual harassment in any context subject to the school's control.. . [and] a plaintiff can allege causation even when a school's policy of deliberate indifference extends to sexual misconduct occurring across campus." *Id.* at 1170. "Allegations that [a school] had actual knowledge or acted with deliberate indifference to a particular incident of harassment are unnecessary to sustain this theory of liability." *Id.*

Here, Plaintiff's allegations in her FAC clearly support a finding of deliberate indifference antecedent to Plaintiff's report of rape. As set forth in the FAC, there can be no doubt that Caltech not only had prior ***direct*** knowledge of the heightened risk of sexual assault on its campus, but that said assaults took place almost always in the dorms, where Plaintiff was raped (thus Caltech was aware of the particular context). This is based on information contained on Caltech's own website. FAC ¶ 12. More specifically, Plaintiff alleges "Caltech is a very small school, with *less than 1,000* undergraduate students. Nonetheless, in 2016 alone, there were 11 *reported* rapes on

---

[2] Critically, the *Karasek* court highlighted that *Simpson* involved an MSJ, after the parties conducted discovery, as opposed to the standard applicable on a motion to dismiss, where broader allegations suffice versus allegations of specific problems of sexual assault required in MSJs. *Id.* at 1171.

22

Caltech's campus (*9 in the residential facilities/dorms*) and 11 *reported* incidents of dating violence (*9 in the residential facilities/dorms*). These are only the *reported* incidents. Plaintiff is informed and believes that there have been multiple other incidents of rape and dating violence of a sexual nature which have not been reported and of which Caltech has been aware. This statistic is also of critical importance because of the 22 reported rapes/sexual assaults/dating violence reported in the year preceding Plaintiff's rape, *18 took pace in the residential facilities/dorms*; Plaintiff was also raped in the residential facilities/dorm. As such, Caltech had prior knowledge of the heightened risk of sexual assault not only on Caltech campus, but that said assaults/violence took place *almost always* in the *residential facilities/dorms*. Nonetheless, Caltech failed to take reasonable steps to curb same, in this context, showing its deliberate indifference. It is widely known (and was widely known prior to Plaintiff's rape) that Caltech has a reputation for promoting and enabling a "rape culture" to exist on campus; so much so that on or about 2016, concerned Caltech students protested at Caltech and posted flyers around campus and in the dorms demanding that the school remedy this issue and take acts of sexual violence seriously. Similarly, Caltech has (and prior to Plaintiff's rape had) a history of failing to support survivors of sexual violence, for victim blaming, for brushing under the rug incidents of sexual violence on campus and for not properly conducting Title IX investigations. Indeed, Gilmartin has (and prior to Plaintiff's rape had) also been publicly criticized for same. Caltech has (and prior to Plaintiff's rape had) a documented history of failing to comply with Title IX and its own policies as it relates to investigations of sexual assault and rape on campus. It is notable that on or about May 22, 2018, an article was published in Caltech's newspaper entitled "Shepard [VP of Student Affairs] and Gilmartin Fail to Support Survivors of Sexual

Violence." FAC ¶¶ 12-13.

Further showing Caltech's prior knowledge of the institutional problem of sexual violence on campus, Plaintiff alleges "subsequent to the filing of this lawsuit, and in response to the repeated failures of its Title IX office, Caltech has wholly revamped and expanded its Title IX office and reformed how it will conduct Title IX investigations. Caltech has hired a new head of Caltech Title IX, it has hired individuals solely charged with investigation of Title IX claims (no longer using professors or the dean to investigate) and will work in conjunction with outside entities such as JPL to ensure compliance with its Title IX obligations." FAC ¶ 36.

It can therefore be reasonably inferred from Plaintiff's allegations that (1) Caltech's policies had the effect of promoting the possibility of sexual violence, (2) that they failed to act, despite knowledge that sexual violence was prevalent, (3) that they failed to act despite actual knowledge of sexual assaults that had occurred in large numbers the preceding years, and (4) that they failed to comply with their own policy of informing victims of their rights under the law and ability to report their assaults to law enforcement. Given that on a motion to dismiss all facts and reasonable inferences must be viewed in the light most favorable to the plaintiff, based on the above, a reasonable jury could find that Caltech's actions prior to Plaintiff's report of rape amounted to deliberate indifference. Accordingly, Caltech's motion must be denied on this basis.

**B.**   **PLAINTIFF HAS PROPERLY PLEADED HER CAUSE OF ACTION FOR VIOLATION OF BUS. & PROF. CODE § 17200, ET SEQ.**

Defendant erroneously argues that Plaintiff's Bus. Prof. Code §17200, *et seq.* claim fails because the underlying claim (Violation of Title IX) upon which this cause of action is predicated fails. As described in detail above, Plaintiff's Title IX cause of

24

action does not fail, and therefore Defendant's motion to dismiss on this ground must be overruled.

Indeed, under <u>Bus. Prof. Code</u> §17200, "unfair competition" includes any unlawful act. Under California law, virtually any law, federal, state or local can serve as a predicate for an action under §17200. Section 17200 "borrows" violations of other laws and treats them as unlawful practices independently actionable under the unfair competition law. *See Smith v. State Farm Mutual Automobile Insurance Co., et al.,* (2001) 93 Cal.App.4th  700.  Courts have interpreted the language in §17200 as "sweeping" and to include virtually "anything that can properly be called a business practice and that at the same time is forbidden by law." *See Bank of the West v. Superior Court*, (1992) 2 Cal.4th 1254, 1266, (quoting *Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 111, 113). Here, Plaintiff's Title IX cause of action can be used as a predicate to the §17200 claim.

## IV.       **CONCLUSION**

For all the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion in its entirety. To the extent this Court sustains Defendant's Motion in any respect, Plaintiff respectfully requests that the Court grant Plaintiff leave to amend her FAC.

Dated: March 11, 2020

THE COCHRAN FIRM CALIFORNIA

By: _____
Anahita Sedaghatfar, Esq.
Attorney for Plaintiff/Counter-Defendant
JANE DOE

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC